975 A.2d 928

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MARTIN
R. TACCETTA, DEFENDANT–RESPONDENT.

Argued January 20, 2009—Decided July 30, 2009.

184

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for appellant (*Anne Milgram,* Attorney General of New Jersey, attorney).

*Steven B. Duke,* a member of the Connecticut bar, argued the cause for respondent (*Marco A. Loracca,* attorney; *Mr. Duke* and *Mr. Loracca,* on the briefs).

Justice ALBIN delivered the opinion of the Court.

In 1993, defendant Martin Taccetta was convicted by a jury of crimes contained in a multi-count indictment and was sentenced to an aggregate term of life imprisonment plus ten years with a thirty-year parole disqualifier. In 2005, defendant was granted post-conviction relief (PCR) based on a judicial finding of ineffective assistance of counsel. The PCR judge found that defendant rejected a plea offer—an offer that he otherwise would have accepted—because his attorney had misinformed him about the sentencing consequences that would follow if defendant were

found guilty of certain crimes in the indictment. On that basis, the PCR judge ordered a new trial. The Appellate Division affirmed.

We now reverse. Even if defendant had been offered a plea agreement, a point hotly disputed by the State, the trial court would have been unable to accept a guilty plea by defendant to the charge of aggravated manslaughter, one of the charges in the proposed plea offer. Defendant testified at the PCR hearing that he was innocent of that charge, and although he professed that he would have perjured himself to gain the benefit of the plea agreement, our court rules and case law do not permit either the taking of a plea, or the sanctioning of one, that is based on a known lie. Because a trial court cannot give its seal of approval to, or become complicit in, a defendant's plan to commit perjury at a plea hearing, a PCR court, engaging in a hindsight review, cannot hold that a plea would have been acceptable had a defendant lied under oath. For that reason, we reinstate the jury's verdict, which followed a fair trial.

## I.

### A.

This case involved a battle between the Lucchese and Bruno–Scarfo organized crime families for control of the profits from certain illegal gambling activities in this State.[1] Both organized crime families were either extorting or attempting to extort money from brothers Pat and Vincent Storino, who were among the principals in a business that manufactured and distributed Joker Poker video slot machines. In this turf war in which both families were seeking the lion's share of tribute from the Storinos, Thomas Ricciardi, a "made" member of the Lucchese crime family, beat to death Vincent Craporatta, the Storinos' uncle, for failing to make

---

[1] A detailed recitation of the facts can be found in *State v. Taccetta (Taccetta I)*, 301 *N.J.Super.* 227, 234–40, 693 *A.*2d 1229 (App.Div.), *certif. denied*, 152 *N.J.* 188, 704 *A.*2d 18 (1997).

timely payments to his "family." Defendant Martin Taccetta also was a member of the Lucchese crime family and, as alleged by the State, was involved not only in the extortion of the Storinos, but also in Craporatta's murder.

A state grand jury returned an indictment against defendant Martin Taccetta and codefendants Michael Taccetta (defendant's brother), Michael Ryan, Anthony Accetturo, Joseph Sodano, and Ricciardi. In particular, defendant was charged with murder, *N.J.S.A.* 2C:11–3(a)(1), (2), *N.J.S.A.* 2C:2–6; first-degree racketeering, *N.J.S.A.* 2C:41–2(c), *N.J.S.A.* 2C:2–6; second-degree conspiracy to commit racketeering, *N.J.S.A.* 2C:41–2(b) to (d); and two counts of second-degree theft by extortion, *N.J.S.A.* 2C:20–5, *N.J.S.A.* 2C:2–6. Defendant and all his codefendants, except Sodano, were jointly tried before a jury.[2] The trial began in April 1993 and concluded four months later when the jury acquitted defendant of Craporatta's murder and convicted him on the four remaining charges.[3]

That same year, the trial court sentenced defendant to an extended term of life imprisonment with a twenty-five-year parole ineligibility period on the first-degree racketeering charge and to a ten-year term with a five-year period of parole ineligibility on each of the extortion charges, with the extortion sentences to run concurrent with each other but consecutive to the racketeering sentence. The conspiracy charge was merged with the racketeering conviction. In all, defendant received an aggregate term of life imprisonment plus ten years with a thirty-year parole disqualifier. The Appellate Division affirmed defendant's convictions, *State v. Taccetta (Taccetta I),* 301 *N.J.Super.* 227, 261, 693 *A.2d* 1229 (App.Div.1997), and this Court denied defendant's petition for certification, 152 *N.J.* 188, 704 *A.2d* 18 (1997).

---

[2] Sodano pled guilty prior to trial.

[3] Michael Taccetta, Accetturo and Ricciardi were found guilty of various charges in the indictment. Ryan was acquitted of all charges.

In 1998, defendant filed a petition for post-conviction relief in which he alleged various theories of ineffective assistance of counsel. The only issue before us is defendant's claim that he rejected the State's plea offer and went to trial based on his counsel's mistaken advice about the sentence he faced if he were acquitted of involvement in Craporatta's murder. Defendant maintained that he received a sentence grossly disproportionate to the one available under the plea agreement extended by the State. The PCR court denied defendant an evidentiary hearing. Defendant appealed.

The Appellate Division remanded the matter to the PCR court to allow for discovery and an evidentiary hearing. *State v. Taccetta (Taccetta II)*, 351 *N.J.Super.* 196, 198, 201–02, 797 *A.*2d 884 (App.Div.), *certif. denied*, 174 *N.J.* 544, 810 *A.*2d 63 (2002). Specifically, the panel instructed the PCR judge to focus on the following issues: (1) whether "a favorable plea offer was made"; (2) whether "the advice [defendant's] counsel gave him respecting his sentencing exposure if acquitted of the murder was seriously deficient in that there was a substantial disparity between the advice and the actual exposure"; and (3) whether "defendant would have accepted the plea offer had he been correctly advised." *Id.* at 201, 797 *A.*2d 884.

### B.

The PCR judge conducted eight days of hearings spanning over two years. He heard testimony from a number of witnesses: the Assistant Attorney General in charge of the prosecution and two Deputy Attorneys General; the attorney representing defendant as well as the attorneys representing four of the codefendants; and defendant and codefendants Ricciardi and Ryan. In December 2005, the PCR judge determined that defendant was deprived of his constitutional right to the effective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 *U.S.* 668, 687, 104 *S.Ct.* 2052, 2064, 80 *L.Ed.*2d 674, 693 (1984), and *State v.*

*Fritz*, 105 *N.J.* 42, 58, 519 *A.2d* 336 (1987). Accordingly, defendant's convictions were reversed and a new trial ordered.[1]

At the PCR hearing, defendant and his attorney acknowledged that defendant knew that if he were found guilty of homicide—the murder or manslaughter of Craporatta—he would be facing a term of life imprisonment. Despite that grim prospect if convicted, defendant testified that he turned down the offer of a twenty-year sentence with an eight-year parole disqualifier because he was confident of an acquittal on the homicide charge, although his attorney was less sanguine about a favorable verdict. Defendant, however, stated that he likely would have accepted a plea offer that yielded a prison term with a five-year parole disqualifier. He also averred that the fate of his codefendants, with the exception of Accetturo, was inextricably tied to his decision and that he knew that his rejection of the State's plea offer meant that none of those codefendants would be given the opportunity to accept their plea offers. All in all, defendant understood that he might possibly be convicted of the murder and therefore was risking his own life—and by inference the lives of his codefendants—by proceeding to trial on the homicide charge.

The PCR judge made the following findings of fact based on the testimony given at the hearing. He determined that the State had made a final plea offer that would have allowed defendant to plead guilty to aggravated manslaughter and first-degree racketeering in return for a maximum term of imprisonment of twenty years with an eight-year parole disqualifier. He also determined that defendant's counsel—an experienced practitioner in criminal law—misadvised his client about the sentencing consequences that would follow various potential trial outcomes.

---

[1] At the PCR hearing, defendant argued that, after his trial, Ricciardi told authorities that defendant's case was based on a passel of fabrications. The PCR judge found that contention to be unsubstantiated and denied defendant's separate motion for additional discovery and a new trial. The Appellate Division affirmed, and we denied leave to appeal on this issue.

The PCR judge accepted counsel's testimony that he misadvised defendant that he could be convicted of first-degree racketeering, and therefore face a life term, only if a jury found him guilty of involvement in Craporatta's murder. Counsel erred by telling defendant that if he were acquitted of the murder and lesser-included homicide offenses, his maximum sentence exposure would be a twenty-year term subject to a ten-year parole disqualifier.[5] The PCR judge noted that extortion is a crime of violence that elevates racketeering from a second-degree to a first-degree offense. He found that counsel did not consider extortion to constitute a violent crime under the racketeering statute, *N.J.S.A.* 2C:41–2(c), and therefore did not contemplate that defendant's conviction of either extortion charge could be the predicate offense for a first-degree racketeering conviction.

Thus, although defendant's attorney told him that his maximum sentence exposure following an acquittal on the murder charge was twenty years, even if convicted of all other charges, in truth, defendant's exposure was an extended term of life imprisonment if convicted of first-degree racketeering with possible consecutive sentences on the other charges. The PCR judge concluded that defendant would have taken the plea agreement if counsel had properly explained to him that his sentencing prospects would not have been favorable even with an acquittal on the murder charge.

In making those findings, the PCR judge rejected the testimony of the chief prosecutor and his deputies who indicated that no final plea offer had ever been extended to defendant and that any final offer required approval by at least the Director of the Division of Criminal Justice. Indeed, a plea offer had never been conveyed in written form. The PCR judge did not consider the failure of a plea offer to be reduced to writing dispositive of the issue. Additionally, although defendant's plea offer was contingent on a

---

[5] The PCR judge rejected defendant's testimony that his attorney told him that his maximum exposure was a ten-year prison term with a five-year parole disqualifier if acquitted of the murder.

global settlement involving his codefendants, the PCR judge found that had defendant taken his plea offer all the codefendants would have acted likewise and accepted their plea offers. Thus, the PCR judge did not give credence to the prosecution's testimony that a global settlement had never approached fruition. He, moreover, rejected the prosecution's argument that defendant and his codefendants would have declined the State's plea offer while potential or unresolved federal charges loomed over the horizon.

In reaching the conclusion that defendant received not only constitutionally deficient advice under the *Strickland/Fritz* standard, but also was prejudiced, the PCR judge accepted that defendant would have lied under oath in order to take the advantageous plea offer. At the PCR hearing, defendant testified that he was innocent of any involvement in Craporatta's killing. Defendant insisted, however, that had he been properly advised by his counsel of the potential sentencing consequences facing him if he were acquitted on the murder charge, he would have perjured himself and admitted to committing aggravated manslaughter to obtain the benefit of the plea deal. Indeed, in response to a question from his attorney, defendant stated that he "was absolutely innocent" of the Craporatta murder. The PCR judge and defendant later engaged in the following colloquy on this subject:

THE COURT: . .

You didn't want to take the stand and lay a factual basis that you participated in the aggravated manslaughter of Vincent [Craporatta].

[DEFENDANT]: No, I wouldn't want to do that, no.

THE COURT: You didn't want to do that.

[DEFENDANT]: But I would have.

THE COURT: Oh, that's not helpful.

[DEFENDANT]: No, but I would have, absolutely.

THE COURT: Okay.

So what you' re telling me is you would have taken the oath and put through a plea and you would have lied and said, I participated in the aggravated manslaughter of Vincent [Craporatta], if the deal was right?

[DEFENDANT]: Yes . .

The Deputy Attorney General also questioned defendant about his assertion of innocence:

[PROSECUTOR]: But, Mr. Taccetta, you've just said you believed you would have to plead to some involvement in the [Craporatta] murder. Isn't that right, sir?
[DEFENDANT]: Yes.
[PROSECUTOR]: And you were prepared to do that, as you think back on it today—
[DEFENDANT]: Yes.

....

[DEFENDANT]: ... I would have plead guilty to the murder. Is that what you're asking me?
[PROSECUTOR]: Yes, sir.
[DEFENDANT]: Yes.
[PROSECUTOR]: Even though—
[DEFENDANT]: I was innocent, yes.
[PROSECUTOR]:—you've maintained here today that you're innocent.
[DEFENDANT]: Yes.

The PCR judge, apparently, did not view defendant's admission that he would have violated his oath by entering a false guilty plea to constitute a legal impediment to the consummation of the plea agreement. The PCR judge, therefore, vacated the jury verdict premised on the fact that defendant would have perjured himself—falsely admitting guilt to an offense to which he still protested his innocence—to secure the benefit of the earlier proposed plea deal.

The Appellate Division affirmed all of the PCR judge's findings. We granted the State's motion for leave to appeal the PCR judge's ordering a new trial based on ineffective assistance of counsel. 195 *N.J.* 513, 950 *A.*2d 902 (2008).

## II.

### A.

The preeminent issue before us is whether defendant's counsel not only provided defendant with constitutionally deficient advice concerning the sentencing consequences that he faced if acquitted of Craporatta's murder, but also whether he suffered prejudice even if he was misinformed. The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey

Constitution both guarantee an accused in a criminal prosecution the right to the effective assistance of counsel.[6] *See Strickland, supra*, 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693 (holding that under Sixth Amendment, "the proper standard for attorney performance is that of reasonably effective assistance"); *Fritz, supra*, 105 *N.J.* at 58, 519 *A.*2d 336 (holding that under Article I, Paragraph 10, "a criminal defendant is entitled to the assistance of reasonably competent counsel").

In assessing ineffective-assistance-of-counsel claims under our State Constitution, this Court in *State v. Fritz* adopted the two-pronged standard formulated by the United States Supreme Court in *Strickland v. Washington*. *Fritz, supra*, 105 *N.J.* at 58, 519 *A.*2d 336 (citing *Strickland, supra*, 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693). Under the *Strickland/Fritz* test,

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."

[*Id.* at 52, 519 *A.*2d 336 (quoting *Strickland, supra*, 466 *U.S.* at 687, 104 *S.Ct.* at 2064, 80 *L.Ed.*2d at 693).]

To satisfy the second prong of the standard, a defendant "must show that there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Ibid.* (quoting *Strickland, supra*, 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698).

B.

In this case, we must decide whether defendant would have or could have entered a guilty plea to the purported plea offer if

---

[6] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . to have the Assistance of Counsel for his defence." *U.S. Const.* amend. VI. Our State Constitution, in similar language, ensures that "[i]n all criminal prosecutions the accused shall have the right . to have the assistance of counsel in his defense." *N.J. Const.* art. I, ¶ 10.

correctly advised concerning the sentencing consequences. As noted earlier, the PCR judge made a number of factual findings: a plea offer was extended to defendant; defendant's offer was part of a proposed global settlement; and defendant, if properly advised by his attorney, and every codefendant would have accepted their plea deals, despite continuing exposure on the federal level.

The State argues that those findings should be rejected because they are not based on sufficient, credible evidence in the record and therefore are clearly erroneous. Not only does the State deny that a final plea offer was on the table, but it contends that so many moving parts were involved before defendant would have been offered or entered a plea that the PCR judge's conclusions strain reason.[7] Although ordinarily an appellate court "should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy," *State v. Johnson*, 42 *N.J.* 146, 161, 199 *A.*2d 809 (1964), the State insists that here the findings are "so plainly unwarranted that the interests of justice demand intervention and correction," *id.* at 162, 199 *A.*2d 809.

We need not review the soundness of the fact-findings made by the PCR judge because we conclude, as a matter of law, that defendant could not have entered a plea of guilty to the purported plea proposal. We reach that conclusion for the simple reason that a defendant does not have the right to commit perjury in giving a factual basis for a crime that he insists he did not commit. Therefore, even if defendant met the first prong of the *Strickland/Fritz* standard—that his counsel was constitutionally ineffective for giving him mistaken advice about the sentencing

---

[7] Under our current court rules, which went into effect after defendant's trial, the judge must conduct a pretrial conference and "address the defendant to determine that the defendant understands ... the State's final plea offer, if one exists ... [and] the sentencing exposure for the offenses charged, if convicted." *R.* 3:9-1(e). This procedure, hopefully, will eliminate most disputes about the nature of the plea offer and the sentencing consequences.

consequences of proceeding to trial—defendant cannot satisfy the second prong of that standard, which requires a showing of prejudice. *See Fritz, supra,* 105 *N.J.* at 52, 519 *A.*2d 336 (citation omitted); *see also Strickland, supra,* 466 *U.S.* at 697, 104 *S.Ct.* at 2069, 80 *L.Ed.*2d at 699 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

Despite the PCR judge's findings, defendant was legally disabled from taking the plea offer because he testified that he would have lied under oath in order to plead guilty to aggravated manslaughter. Thus, defendant would have been compelled to go to trial. For that reason, he cannot establish that " 'but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Ibid.* (quoting *Strickland, supra,* 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L.Ed.*2d at 698).

We are not required to give "deference to the legal conclusions of the PCR court," *State v. Feaster,* 184 *N.J.* 235, 278, 877 *A.*2d 229 (2005) (citation and internal quotation marks omitted), particularly wrong ones.

The notion that a defendant can enter a plea of guilty, while maintaining his innocence, is foreign to our state jurisprudence.[8] Court-sanctioned perjury is not a permissible basis for

---

[8] The federal standard is different from our own. In *North Carolina v. Alford,* the United States Supreme Court held that a sentencing judge may accept a plea from a defendant who makes claims of innocence at the time of sentencing as long as there is a "strong factual basis for the plea demonstrated by the State." 400 *U.S.* 25, 37–38, 91 *S.Ct.* 160, 167–68, 27 *L.Ed.*2d 162, 171–72 (1970). In that case, the Court recognized that the defendant had entered such a plea, despite his claims of innocence, because "he faced the threat of the death penalty if he did not do so." *Id.* at 28, 91 *S.Ct.* at 163, 27 *L.Ed.*2d at 166. *Alford* pleas have been accepted in non-capital cases *See, e.g., United States v. Gaskins,* 485

the entry of a plea in this State. *See Shammas v. Shammas*, 9 *N.J.* 321, 330, 88 *A.2d* 204 (1952) ("All perjury is an affront to the dignity of the court and to the integrity of the judicial process...."). *Rule* 3:9–2 instructs our courts not to accept a plea of guilty unless *"there is a factual basis for the plea and that the plea is made voluntarily,* not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea." (Emphasis added). To accept a guilty plea, a judge must be " 'satisfied from the lips of the defendant that he committed the acts which constitute the crime.' " *State v. Slater*, 198 *N.J.* 145, 155, 966 *A.2d* 461 (2009) (quoting *State v. Smullen*, 118 *N.J.* 408, 415, 571 *A.2d* 1305 (1990)). "Even if a defendant wished to plead guilty to a crime he or she did not commit, he or she may not do so. No court may accept such a plea." *Smullen, supra*, 118 *N.J.* at 415, 571 *A.2d* 1305.

In the constellation of our values, it is intolerable for a court to be complicit in accepting a guilty plea from a defendant protesting his innocence. The integrity of our criminal justice system requires that we strive to minimize the ultimate miscarriage of justice—the conviction of an innocent person. For that reason, "[w]hen at the time of [a plea hearing] the court is expressly informed by the attorney for the accused that he claims to be innocent, a plea of guilty should be refused." *State v. Reali*, 26 *N.J.* 222, 224, 139 *A.2d* 300 (1958). Moreover, an attorney would be engaged in professional misconduct if he or she knowingly assisted a client to perpetrate a fraud on the court by assisting or encouraging a client to lie under oath. *See RPC* 3.3(a) ("A

*F.2d* 1046 (D.C.Cir.1973). Some federal courts, however, have rejected *Alford* pleas. *See, e.g., United States v. Cox*, 923 *F.2d* 519, 524–26 (7th Cir.1991); *United States v. Gomez–Gomez*, 822 *F.2d* 1008, 1011 (11th Cir.1987), *cert. denied*, 484 *U.S.* 1028, 108 *S.Ct.* 755, 98 *L. Ed.2d* 767 (1988); *United States v. O'Brien*, 601 *F.2d* 1067, 1070 (9th Cir.1979); *United States v. Bednarski*, 445 *F.2d* 364, 365–66 (1st Cir.1971). It should also be noted that *Federal Rule of Criminal Procedure* 11(b)(3) requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."

lawyer shall not knowingly ... fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting an illegal, criminal or fraudulent act by the client. ...").

If a trial court cannot accept a guilty plea that is known to be false, then it would be strange indeed for a PCR court to vacate a jury verdict following a fair trial on the ground that defendant would have taken an advantageous plea offer with a limited sentence exposure if only he had been given the opportunity to lie under oath. A court cannot give its imprimatur to perjury or in any way suggest that the requirement of a truthful factual basis at a plea colloquy is an empty formality.

Moreover, several assumptions are built into defendant's representation that he would have successfully entered a plea if only his counsel had correctly advised him of the sentencing consequences of accepting a plea as opposed to going to trial. First, we must presume that defendant would not have told his attorney of his intention to enter a false plea or, if he did, that his attorney would have assisted him in perpetrating a fraud on the court in violation of the *Rules of Professional Conduct*. Second, we must presume that defendant not only would have lied about his involvement in the Craporatta murder, but also that in giving a factual basis for his plea he would not have revealed, in some way, that he persisted in his claim of innocence. If defendant had disclosed to the trial court, in attempting to effectuate the entry of a plea, that he was guiltless, the court would have been duty-bound to reject the plea.

Defendant's argument that even if his "assertions of innocence proved a barrier" to entering a guilty plea to aggravated manslaughter, he and the State nevertheless would have come to some other satisfactory plea agreement is pure speculation that finds no support in the record. Moreover, we do not agree with defendant that it is "absurd" that under our system of criminal justice he should be denied an ineffective-assistance-of-counsel remedy because he is barred from entering a perjured plea.

We are mindful that our system of justice is not perfect and that, at times, an accused, without the knowledge of the court, may enter a plea of guilty to a crime he did not commit to insulate himself from a potentially greater sentence if found guilty by a jury. That is something over which we have no control. It is another thing, however, for a court to say it is acceptable for a defendant to give a perjured plea. Our court rules and case law require a factual basis for a plea of guilty, that is, a truthful account of what actually occurred to justify the acceptance of a plea. That approach in the long-run is the best means of ensuring that innocent people are not punished for crimes they did not commit. It is an approach that is essential to the very integrity of our criminal justice system.

Just because we are powerless to control or eliminate every negative practice in our criminal justice system does not mean that we must condone those practices. Though we recognize that sometimes an accused, unknown to the trial judge, will perjure himself to put through a plea agreement, a court cannot give official license to such a practice. Yet, that is precisely what happened in this case. The PCR judge found that, had defendant been given the opportunity, he would have perjured himself at the plea hearing, and an unwitting court would have accepted the plea offer. On that basis, the PCR judge vacated a jury verdict that was the result of a fair trial. That result is antithetical to our court rules, case law, and the administration of justice and, therefore, we must reject it.

### III.

Because defendant could not have accepted the purported plea offer extended by the State, regardless of any deficient advice from his attorney, he cannot demonstrate that he suffered prejudice from his claim of ineffective assistance of counsel. Accordingly, we reverse the judgment of the Appellate Division, vacate the PCR court's grant of post-conviction relief, reinstate defendant's

convictions and sentence, and remand to the PCR court for proceedings consistent with this opinion.

*For reversal and remandment*—Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.

975 A.2d 937

IN THE MATTER OF JOHN LOUIS D'INTINO, JR., AN ATTORNEY AT LAW.

August 11, 2009.

## ORDER

**JOHN LOUIS D'INTINO, JR.** of **PHILADELPHIA, PENN-SYLVANIA,** who was admitted to the bar of this State in 1997, having tendered his consent to disbarment as an attorney at law of the State of New Jersey, and good cause appearing;

It is ORDERED that **JOHN LOUIS D'INTINO, JR.** is disbarred by consent, effective immediately; and it is further

ORDERED that respondent's name be stricken from the roll of attorneys and that he be permanently restrained and enjoined from practicing law; and it is further

ORDERED that all funds, if any, currently existing or hereinafter deposited in any New Jersey financial institution maintained by **JOHN LOUIS D'INTINO, JR.** pursuant to *Rule* 1:21–6 shall be restrained from disbursement except on application to this Court, for good cause shown and shall be transferred by the financial institution to the Clerk of the Superior Court, who is directed to deposit the funds in the Superior Court Trust Fund pending further Order of this Court; and it is further

ORDERED that respondent comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

975 A.2d 380

IN THE MATTER OF THOMAS DESENO,
AN ATTORNEY AT LAW.

July 10, 2009.

## ORDER

The Disciplinary Review Board having filed with the Court its decision in DRB 08–367, concluding that **THOMAS DeSENO** of **MANASQUAN,** who was admitted to the bar of this State in 1990, should be reprimanded for violating *RPC* 1.4(b) and (c) (failure to communicate with client), and *RPC* 8.1(b) (failure to cooperate with ethics authorities), and good cause appearing;

It is ORDERED that **THOMAS DeSENO** is hereby reprimanded; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

976 A.2d 380

IN THE MATTER OF THOMAS J. MORAN,
JR., AN ATTORNEY AT LAW.

August 11, 2009.

## ORDER

The Office of Attorney Ethics having filed with the Court a petition pursuant to *Rule* 1:20–11(a) seeking the immediate temporary suspension of **THOMAS J. MORAN, JR.,** of **NEWARK,** who was admitted to the bar of this State in 2002, and good cause appearing;

It is ORDERED that **THOMAS J. MORAN, JR.,** is temporarily suspended from the practice of law, effective immediately and until the further Order of this Court; and it is further

ORDERED that the Attorney Trustee appointed for the protection of the assets and files of the law practice of **THOMAS J. MORAN, JR.,** shall make the appropriate disbursements from respondent's accounts to those clients and other persons who can be located and whose funds can be identified, and at the end of the trusteeship, the funds remaining, if any, shall be transferred to the Superior Court Trust Fund, where they shall remain restrained from disbursement pending the further Order of this Court, for good cause shown; and it is further

ORDERED that **THOMAS J. MORAN, JR.,** be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that **THOMAS J. MORAN, JR.,** comply with *Rule* 1:20–20 dealing with suspended attorneys.

976 A.2d 381

FREDERICK VOSS, PLAINTIFF, v. KRISTOFFE J. TRANQUILINO, ET AL., DEFENDANTS, AND TIFFANY'S RESTAURANT, DEFENDANT–MOVANT, AND JAIME A. TRANQUILINO, DEFENDANT.

July 2, 2009.

ORDERED that the motion for leave to appeal is granted, and the matter is summarily remanded to the Appellate Division to consider on the merits.

976 A.2d 381

MATTHEW P. CARDIELLO, PLAINTIFF–MOVANT, v. PENNSYLVANIA GENERAL INSURANCE COMPANY, ET AL., DEFENDANTS–RESPONDENTS.

July 10, 2009.

ORDERED that the motion for leave to appeal is granted.

976 A.2d 381

HIGHLAND LAKES COUNTRY CLUB AND COMMUNITY ASSOCIATION, PLAINTIFF, AND FRANK W. NICASTRO, SR. AND LISA ANN NICASTRO, PLAINTIFFS–RESPONDENT, v. SUBURBAN CONSULTING ENGINEERS, INC., AND MARTIN SIKORSKI, P.L.S., THIRD–PARTY DEFENDANTS–MOVANTS.

July 20, 2009.

ORDERED that the motion for leave to appeal is granted.

976 A.2d 381

STATE OF NEW JERSEY, PLAINTIFF–MOVANT, v. RICHARD CLARKE, DEFENDANT–RESPONDENT.

July 20, 2009.

ORDERED that the motion for leave to appeal is granted.

976 A.2d 382

STATE OF NEW JERSEY, PLAINTIFF–MOVANT, v. WILLIAM T. DOLAN, DEFENDANT–RESPONDENT.

July 20, 2009.

ORDERED that the motion for leave to appeal is granted.

976 A.2d 382

MARINA STENGART, PLAINTIFF–RESPONDENT, v. LOVING CARE AGENCY, INC., STEVE VELLA, ROBERT CREAMER, LORENA LOCKEY, ROBERT FUSCO, AND LCA HOLDINGS, INC., DEFENDANTS–MOVANTS.

July 29, 2009.

ORDERED that the motion for leave to appeal is granted.

976 A.2d 382

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
TERRELL JACKSON, DEFENDANT–PETITIONER.

July 15, 2009.

ORDERED that the petition for certification is granted, and the matter is summarily remanded to the Appellate Division for reconsideration in light of *State v. Alonzo Hill*, 199 *N.J.* 545, 974 *A.2d* 403 (2009).

206

208

210

976 A.2d 1092

IN THE MATTER OF ARNOLD M. ABRAMOWITZ,
AN ATTORNEY AT LAW.

August 27, 2009.

## ORDER

This matter having been duly presented to the Court, it is ORDERED that **ARNOLD M. ABRAMOWITZ,** of **IRVING-TON,** who was admitted to the bar of this State in 1976, and who was suspended from the practice of law for a period of three months, effective March 13, 2009, by Order of this Court filed February 13, 2009, be restored to the practice of law, effective immediately.

977 A.2d 1050

IN THE MATTER OF PHILIP BRENT HOVER,
AN ATTORNEY AT LAW.

August 31, 2009.

## ORDER

**PHILIP BRENT HOVER** of **MONTVALE,** who was admitted
to the bar of this State in 1982, having tendered his consent to
disbarment as an attorney at law of the State of New Jersey, and
good cause appearing;

It is ORDERED that **PHILIP BRENT HOVER** is disbarred
by consent, effective immediately; and it is further

ORDERED that respondent's name be stricken from the roll of
attorneys and that he be permanently restrained and enjoined
from practicing law; and it is further

ORDERED that all funds, if any, currently existing or hereinaf-
ter deposited in any New Jersey financial institution maintained
by **PHILIP BRENT HOVER** pursuant to Rule 1:21–6 shall be
restrained from disbursement except on application to this Court,
for good cause shown and shall be transferred by the financial
institution to the Clerk of the Superior Court, who is directed to
deposit the funds in the Superior Court Trust Fund pending
further Order of this Court; and it is further

ORDERED that respondent comply with Rule 1:20–20 dealing
with disbarred attorneys; and it is further

ORDERED that the entire record of this matter be made a
permanent part of respondent's file as an attorney at law of this
State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 913

IN THE MATTER OF PAUL J. HIRSH, AN ATTORNEY AT LAW.

September 9, 2009.

## ORDER

**PAUL J. HIRSH** of **MORRISTOWN,** who was admitted to the bar of this State in 1974, having tendered his consent to disbarment as an attorney at law of the State of New Jersey, and good cause appearing;

It is ORDERED that **PAUL J. HIRSH** is disbarred by consent, effective immediately; and it is further

ORDERED that respondent's name be stricken from the roll of attorneys and that he be permanently restrained and enjoined from practicing law; and it is further

ORDERED that all funds, if any, currently existing or hereinafter deposited in any New Jersey financial institution maintained by **PAUL J. HIRSH** pursuant to *Rule* 1:21–6 shall be restrained from disbursement except on application to this Court for good cause shown and shall be transferred by the financial institution to the Clerk of the Superior Court, who is directed to deposit the funds in the Superior Court Trust Fund pending further Order of this Court; and it is further

ORDERED that respondent comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 913

IN THE MATTER OF FRANKLIN G.
SOTO, AN ATTORNEY AT LAW.

September 10, 2009.

## ORDER

The Disciplinary Review Board having filed with the Court its decision in DRB 08–410, concluding that **FRANKLIN G. SOTO** of **PATERSON,** who was admitted to the bar of this State in 1990, should be reprimanded for violating *RPC* 1.1(a) (gross neglect), *RPC* 1.3 (lack of diligence), *RPC* 1.4(b) (failure to communicate with client), *RPC* 1.5(c) (failure to provide written fee agreement), and *RPC* 1.7(a) (conflict of interest), and good cause appearing;

It is ORDERED that **FRANKLIN G. SOTO** is hereby reprimanded; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 914

IN THE MATTER OF EMERY Z. TOTH, JUDGE
OF THE MUNICIPAL COURT.

September 14, 2009.

## ORDER

The Advisory Committee on Judicial Conduct having filed with the Court pursuant to *Rule* 2:15–15(a), a presentment recommending that **EMERY Z. TOTH**, Judge of the Municipal Court of the Borough of South River, be publicly reprimanded for violating *Canon* 1 (a judge should observe high standards of conduct so the integrity and independence of the judiciary may be preserved), *Canon* 2A (a judge should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary), *Canon* 3A(2) (a judge should maintain order and decorum in judicial proceedings), *Canon* 3A(3) (a judge should be patient, dignified, and courteous to litigants, attorneys, and others with whom the judge deals in an official capacity), and for engaging in conduct prejudicial to the administration of justice that brings the judicial office into disrepute, and engaging in intemperate conduct, in violation of *Rule* 2:15–8(a)(4) and(6);

And respondent, through counsel, having accepted the findings and recommendation for discipline of the Advisory Committee on Judicial Conduct and having waived his right to the issuance of an Order to Show Cause and a hearing before the Supreme Court;

And good cause appearing;

It is ORDERED that the findings and recommendation of the Advisory Committee on Judicial Conduct are adopted and **EMERY Z. TOTH**, Judge of the Municipal Court of the Borough of South River, is hereby publicly reprimanded.

978 A.2d 914

IN THE MATTER OF JAMES C. EZEILO,
AN ATTORNEY AT LAW.

September 15, 2009.

## ORDER

This matter have been duly presented to the Court pursuant to Rule 1:20–10(b), following a motion for discipline by consent in DRB 08–303, of **JAMES C. EZEILO,** formerly of **NEWARK,** who was admitted to the bar of this State in 1997;

And the Office of Attorney Ethics and respondent having signed a stipulation of discipline by consent in which it was agreed that respondent violated *RPC* 1.15(a) (negligent misappropriation of escrow funds), and the provisions of *RPC* 1.15(d) and *Rule* 1:21–6 (recordkeeping deficiencies);

And the parties having agreed that respondent's conduct violated *RPC* 1.15(a), *RPC* 1.15(d) and *Rule* 1:21–6, and that said conduct warrants a reprimand;

And the Disciplinary Review Board having determined that a reprimand is the appropriate discipline for respondent's ethics violations and having granted the motion for discipline by consent in District Docket Nos. XIV–07–321E and XIV–07–322E;

And the Disciplinary Review Board having submitted the record of the proceedings to the Clerk of the Supreme Court for the entry of an order of discipline in accordance with *Rule* 1:20–16(e);

And the Court having ordered respondent to show cause why the Court should accept the discipline by consent or why the Court should not take other action as it deems appropriate;

And the Court having considered the additional submissions of respondent and the Office of Attorney Ethics and having determined to accept the discipline by consent;

And good cause appearing;

It is ORDERED that **JAMES C. EZEILO,** formerly of **NEWARK,** is hereby reprimanded; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 915

IN THE MATTER OF JAMES C. EZEILO,
AN ATTORNEY AT LAW.

September 15, 2009.

## ORDER

This matter have been duly presented to the Court pursuant to *Rule* 1:20–10(b), following a motion for discipline by consent in DRB 09–040, of **JAMES C. EZEILO,** formerly of **NEWARK,** who was admitted to the bar of this State in 1997;

And the District VA Ethics Committee and respondent having signed a stipulation of discipline by consent in which it was agreed that respondent violated *RPC* 1.1(a) (gross neglect), *RPC* 1.3 (lack of diligence), and *RPC* 1.16(d) (improper withdrawal from representation) and *RPC* 1.4(b) (failure to communicate with client);

And the parties having agreed that respondent's conduct violated *RPC* 1.1(a), *RPC* 1.3, *RPC* 1.4(b), and *RPC* 1.16(d), and that said conduct warrants a three-month suspension;

And the Disciplinary Review Board having determined that a three-month suspension is the appropriate discipline for respondent's ethics violations, which it determined did not include a violation of *RPC* 1.4(b), and having granted the motion for discipline by consent in District Docket No. VA–07–12E;

And the Disciplinary Review Board having submitted the record of the proceedings to the Clerk of the Supreme Court for the entry of an order of discipline in accordance with *Rule* 1:20–16(e);

And the Court having ordered respondent to show cause why the Court should accept the discipline by consent or why the Court should not take other action as it deems appropriate;

And the Court having considered the additional submissions of respondent and the Office of Attorney Ethics and having determined to accept the discipline by consent;

And good cause appearing;

It is ORDERED that **JAMES C. EZEILO,** formerly of **NEW-ARK** is hereby suspended from the practice of law for a period of three-months, effective immediately and until the further Order of the Court; and it is further

ORDERED that pursuant to *Rule* 1:20–20(c), respondent's failure to comply with the Affidavit of Compliance requirement of *Rule* 1:20–20(b)(15) may (1) preclude the Disciplinary Review Board from considering respondent's petition for reinstatement for a period of up to six months from the date respondent files proof of compliance; (2) be found to constitute a violation of *RPC* 8.1(b) and *RPC* 8.4(c); and (3) provide a basis for an action for contempt pursuant to *Rule* 1:10–2; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual

expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 916

IN THE MATTER OF HORATIUS A. GREENE,
II, AN ATTORNEY AT LAW.

September 15, 2009.

## ORDER

The Disciplinary Review Board having filed with the Court its decision in DRB 08–389, recommending the disbarment of **HORATIUS A. GREENE, II,** of **NEWARK,** who was admitted to the bar of this State in 1974, for violating *RPC* 1.15(a) (knowing misappropriation), *RPC* 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), and the principles of *In re Wilson*, 81 *N.J.* 451, 409 *A.2d* 1153 (1979);

And **HORATIUS A. GREENE, II,** having been ordered to show cause why he should not be disbarred or otherwise disciplined;

And good cause appearing;

It is ORDERED that **HORATIUS A. GREENE, II,** be disbarred, effective immediately, and that his name be stricken from the roll of attorneys;

ORDERED that all funds, if any, currently existing or hereinafter deposited in any New Jersey financial institution maintained by **HORATIUS A. GREENE, II,** pursuant to *Rule* 1:21–6 be restrained from disbursement except on application to this Court, for good cause shown, and shall be transferred by the financial institution to the Clerk of the Superior Court, who is directed to

deposit the funds in the Superior Court Trust Fund pending the further Order of this Court; and it is further

ORDERED that **HORATIUS A. GREENE, II,** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 917

IN THE MATTER OF GARY J. LESSER, AN ATTORNEY AT LAW.

September 17, 2009.

**ORDER**

The Disciplinary Review Board having filed with the Court its decision in DRB 08–331 and DRB 08–332, recommending that **GARY J. LESSER,** formerly of **BUDD LAKE,** who was admitted to the bar of this State in 1969, and who has been suspended from the practice of law since October 27, 1993, be disbarred, based on his conviction in the United States District Court for the Eastern District of Pennsylvania of wire fraud, money laundering, and aiding and abetting, contrary to 18 *U.S.C.* §§ 1343, 1957 and 2, conduct that violates *RPC* 8.4(b) (committing criminal act that reflects adversely on honesty, trustworthiness or fitness of a lawyer)(DRB 08–331), and for his violations of *RPC* 1.7(a) and *RPC* 1.9(a) (conflict of interest), *RPC* 4.1(a) (making material

misrepresentations to third person and failing to disclose material fact when necessary to avoid assisting criminal or fraudulent act), *RPC* 5.5(a)(1) and *N.J.S.A.* 2C:21–22 (unauthorized practice of law), and *RPC* 8.4(c) (conduct involving dishonesty deceit, fraud, or misrepresentation)(DRB 08–332);

And **GARY J. LESSER** having been ordered to show cause why he should not be disbarred or otherwise disciplined;

And good cause appearing;

It is ORDERED that **GARY J. LESSER** be disbarred, effective immediately, and that his name be stricken from the roll of attorneys; and it is further

ORDERED that **GARY J. LESSER** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 917

IN THE MATTER OF LAURA A. SCOTT, A/K/A LAURA
P. SCOTT, AN ATTORNEY AT LAW.

September 17, 2009.

## ORDER

The Disciplinary Review Board having filed with the Court its decision in DRB 08–293, recommending on the record certified to the Board pursuant to *Rule* 1:20–4(f) (default by respondent), that **LAURA A. SCOTT, a/k/a LAURA P. SCOTT,** formerly of **TEANECK,** who was admitted to the bar of this State in 1984, and who has been temporarily suspended from the practice of law since October 31, 2007, be disbarred for violating *RPC* 1.15(a) (knowing misappropriation of escrow funds) and the principles of *In re Wilson,* 81 *N.J.* 451, 409 *A.2d* 1153 (1979), and *In re Hollendonner,* 102 *N.J.* 21, 504 *A.2d* 1174 (1985);

And **LAURA A. SCOTT, a/k/a LAURA P. SCOTT,** having failed to appear on the return date of the Order to Show Cause issued in this matter;

And good cause appearing;

It is ORDERED that **LAURA A. SCOTT, a/k/a LAURA P. SCOTT,** be disbarred, effective immediately, and that her name be stricken from the roll of attorneys;

ORDERED that **LAURA A. SCOTT, a/k/a LAURA P. SCOTT** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual

expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 918

IN THE MATTER OF ANDREW M. KIMMEL,
AN ATTORNEY AT LAW.

September 17, 2009.

## ORDER

**ANDREW M. KIMMEL,** formerly of **CEDAR KNOLLS,** who was admitted to the bar of this State in 1968, and who has been suspended from the practice of law since May 24, 2006, having tendered his consent to disbarment as an attorney at law of the State of New Jersey, and good cause appearing;

It is ORDERED that **ANDREW M. KIMMEL** is disbarred by consent, effective immediately; and it is further

ORDERED that respondent's name be stricken from the roll of attorneys and that he be permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with *Rule* 1:20–20 dealing with disbarred attorneys; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this state; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 918

IN THE MATTER OF RICHARD M. ROBERTS,
AN ATTORNEY AT LAW.

September 24, 2009.

## ORDER

The Disciplinary Review Board having filed with the Court its decision and supplemental decision in DRB 09–046, concluding that **RICHARD M. ROBERTS** of **WEST CALDWELL,** who was admitted to the bar of this State in 1971, should be disciplined and required to practice law under supervision for violating RPC 1.3 (lack of diligence), *RPC* 1.4(b) (failure to keep client informed), *RPC* 1.5(b) (failure to provide client with a written fee agreement),

And good cause appearing;

It is ORDERED that RICHARD M. ROBERTS is hereby censured; and it is further

ORDERED that respondent shall practice law under the supervision of a practicing attorney approved by the Office of Attorney Ethics for a period of two years and until the further Order of the Court; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 919

IN THE MATTER OF JOSEPH J. LOWENSTEIN,
AN ATTORNEY AT LAW.

September 24, 2009.

## ORDER

The Disciplinary Review Board having filed with the Court its decision in DRB 08–390, concluding that **JOSEPH J. LOWENSTEIN** of **PATERSON,** who was admitted to the bar of this State in 1985, should be suspended from the practice of law for a period of three months for violating *RPC* 1.3 (lack of diligence) and *RPC* 1.4(b) (failure to communicate with clients);

And the Disciplinary Review Board having further concluded that respondent should be required to submit proof of his fitness to practice law, and that on reinstatement to practice, he should be supervised in the practice of law;

And good cause appearing;

It is ORDERED that **JOSEPH J. LOWENSTEIN** is suspended from the practice of law for a period of three months, and until the further Order of the Court, effective October 23, 2009; and it is further

ORDERED that prior to reinstatement to the practice of law, respondent shall submit proof of his fitness to practice as attested to by a mental health professional approved by the Office of Attorney Ethics; and it is further

ORDERED that following his reinstatement to practice, respondent shall practice under the supervision of a practicing attorney approved by the Office of Attorney Ethics for a period of two years and until the further Order of the Court; and it is further

ORDERED that respondent comply with Rule 1:20–20 dealing with suspended attorneys; and it is further

ORDERED that pursuant to *Rule* 1:20–20(c), respondent's failure to comply with the Affidavit of Compliance requirement of

*Rule* 1:20–20(b)(15) may (1) preclude the Disciplinary Review Board from considering respondent's petition for reinstatement for a period of up to six months from the date respondent files proof of compliance; (2) be found to constitute a violation of *RPC* 8.1(b) and *RPC* 8.4(c); and (3) provide a basis for an action for contempt pursuant to *Rule* 1:10–2; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.

978 A.2d 920

IN THE MATTER OF RICHARD S. YUSEM,
AN ATTORNEY AT LAW.

September 24, 2009.

## ORDER

The Disciplinary Review Board having filed with the Court its decision in DRB 08–371, concluding that **RICHARD S. YUSEM** of **SOMERVILLE,** who was admitted to the bar of this State in 1977, should be censured for violating *RPC* 1.5(b) (failure to communicate in writing the basis or rate of fee), and *RPC* 8.1(b) (failure to cooperate with disciplinary authorities), and good cause appearing;

It is ORDERED that **RICHARD S. YUSEM** is hereby censured; and it is further

ORDERED that the entire record of this matter be made a permanent part of respondent's file as an attorney at law of this State; and it is further

ORDERED that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs and actual expenses incurred in the prosecution of this matter, as provided in *Rule* 1:20–17.