**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1453-19

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

VICTOR ALVAREZ,

      Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**September 7, 2022**

**APPELLATE DIVISION**

Argued September 28, 2021 – Decided September 7, 2022

Before Judges Messano, Accurso, and Enright.

On appeal from the Superior Court of New Jersey,
Law Division, Hudson County, Indictment No.
18-03-0172.

Eric M. Mark argued the cause for appellant (Law
Office of Eric M. Mark, attorneys; Eric M. Mark, on
the briefs).

Lillian Kayed, Assistant Prosecutor, argued the cause
for respondent (Esther Suarez, Hudson County
Prosecutor, attorney; Lillian Kayed, on the briefs).

    The opinion of the court was delivered by

ACCURSO, J.A.D.

Indicted in 2018 on charges of first- and second-degree sexual assault, Victor Alvarez, a lawful permanent resident of the United States since 2010, was offered a recommended sentence of two years' probation in exchange for his guilty plea to fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(a) or third-degree criminal restraint, N.J.S.A. 2C:13-2. Alvarez's defense counsel recommended he consult with immigration counsel about the deportation consequences of the plea and provided him with the names of three immigration lawyers along with a list of questions Alvarez should put to the one he selected.

Alvarez retained a lawyer on the list, who wrote to defense counsel that because Alvarez advised he'd pleaded guilty to shoplifting in New York in 2016, "a crime involving moral turpitude," a guilty plea to criminal restraint, which counsel described as another crime of moral turpitude, would make Alvarez deportable.[1] Although noting he had "limited information regarding the [New York] charge other than the rap sheet," immigration counsel advised "[u]nfortunately, there is no good option for this client" other than pre-trial intervention not conditioned on a guilty plea.

---

[1] Immigration counsel did not address a plea to criminal sexual contact, but Alvarez does not dispute it is considered a crime of moral turpitude.

A-1453-19

Alvarez rejected the plea offer and went to trial. The jury convicted him of first-degree aggravated sexual assault of a victim whom he knew, or should have known, was physically helpless or incapacitated. N.J.S.A. 2C:14-2(a)(7). He was sentenced in February 2019 to fifteen years in State prison, subject to the periods of parole ineligibility and supervision required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and the registration and reporting requirements of Megan's Law, N.J.S.A. 2C:7-1 to -23.

Two months after his sentencing, defendant filed a petition for post-conviction relief (PCR) with the assistance of counsel, alleging his plea counsel and the lawyer he retained to provide him immigration advice were both ineffective because they provided him incorrect advice on his ability to accept the plea and avoid deportation. Specifically, defendant maintained he was arrested in New York for petit theft, a misdemeanor, but was convicted only of disorderly conduct, classified as a "violation" under New York law. Defendant claimed his plea counsel failed to provide immigration counsel with a certified disposition of his prior conviction, but that both lawyers had his criminal case history, which reflected the downgraded disorderly conduct conviction.

Defendant claimed his plea counsel's failure to correct the immigration lawyer's mistake about defendant's criminal history resulted in incorrect advice

3

on which he relied in rejecting the plea. Defendant maintained had he not been provided incorrect advice regarding the deportation consequences of pleading guilty to criminal restraint, he would have accepted the plea, resulting in no jail time and avoiding deportation, his primary objective.[2] Instead, he rejected the plea, was convicted at trial and is now serving a fifteen-year NERA term to be followed by near-certain deportation on his release.

In support of his petition, defendant presented the certification of his immigration counsel and Michael Noriega, another immigration lawyer, about the effect a correct understanding of defendant's prior New York conviction would have on his risk of deportation from a conviction for criminal restraint. Both lawyers agreed a disorderly conduct offense is not a crime involving moral turpitude. Thus, both agreed defendant's conviction for criminal restraint would not have been a second crime of moral turpitude on his record. A lawful permanent resident is deportable for any two convictions of crimes involving moral turpitude whenever committed under section 237(a)(2)(A)(ii) of the Immigration and Nationality Act. See 8 U.S.C. § 1227(a)(2)(A)(ii).

The immigration lawyers, however, disagreed over whether defendant could have safely pleaded guilty to criminal restraint. Defendant's

---

[2] Defendant's plea counsel submitted a certification averring that "[h]ad an immigration safe plea been available [he] would have advised [defendant] to take the plea" and believed defendant "would have done so."

immigration counsel opined that based on "the statutory definition of criminal restraint, the guilty plea and the new Immigration and Custom Enforcement (ICE) Priority Enforcement Program," defendant "would most likely have been referred to ICE for a removal action." But assuming immigration officials did not consider defendant's plea to criminal restraint an aggravated felony incorporating "the essential elements of the federal definition of 'rape' or 'kidnapping,'" which counsel averred would depend upon which section of the criminal restraint statute was charged and defendant's plea allocution, counsel maintained defendant would have been entitled to a hearing before an immigration judge to present a cancellation of removal defense. Defendant's immigration counsel opined defendant thus could have been granted relief from removal, "[a]ssuming [defendant's] positive contributions outweigh[ed] the negative criminal history." He concluded that had he known defendant's New York conviction was only a disorderly conduct violation, he would have advised defendant "to further explore a plea to criminal restraint . . . as this plea may have preserved" a cancellation of removal defense to deportation.

Noriega, the immigration lawyer retained to review the immigration advice defendant received in connection with his plea, submitted a certification opining defendant's "plea offer was immigration safe" for defendant "and should have been accepted." While acknowledging that criminal sexual

A-1453-19

contact is a crime of moral turpitude, Noriega noted it would have been defendant's first such crime, and because defendant had been in the country for more than five years, it would not have made him deportable. Noriega also opined that criminal restraint in violation of N.J.S.A. 2C:13-2(b), is "likely not" a crime of moral turpitude, although he admitted the question remains an open one. Nevertheless, Noriega concluded "[t]he written advice given to [defendant] regarding the immigration consequences of the plea offer was wrong."

Noriega claimed the advice was inadequate to permit defendant "a full grasp of the immigration risk he faced, if any," and failed to provide him sufficient information to make a knowing decision as to whether to accept the plea offer. He claimed given defendant's immigration status at the time, defendant "could have safely accepted the extremely favorable plea offer in this case," and his decision to reject such a favorable plea was based on "a misapprehension of the immigration consequences he faced."

The PCR judge dismissed the petition without an evidentiary hearing. Acknowledging "[t]his is not a case in which a petitioner makes an implausible claim that he would have risked his chances at trial if not for the immigration advice received," the judge found that assuming defendant's allegations are true, "he was prejudiced." The judge also found, however, that immigration

A-1453-19

counsel's "apparently inaccurate advice" did not constitute ineffective assistance of counsel because immigration counsel was not defendant's counsel of record in the criminal proceeding.

The court further found immigration counsel's error could not be attributed to plea counsel. The judge rejected defendant's argument that plea counsel was ineffective for not correcting immigration counsel's mistake about defendant's New York conviction. She found plea counsel discharged his obligations under Padilla by advising defendant to consult with immigration counsel. Padilla v. Kentucky, 559 U.S. 356 (2010). Noting the mistake stemmed from information defendant provided his immigration counsel about his New York conviction, the judge determined she could not "conclude that Padilla and its progeny required [plea counsel] to be aware [defendant's] apparent misunderstanding as to the nature of his conviction would have impacted whether or not he would be deportable."

Defendant appeals, arguing the trial court erred in "absolv[ing] plea counsel of any responsibility" for the incorrect advice defendant received about the deportation consequences of his plea. Defendant contends his plea counsel "was ineffective for failing to correct a factual error within his knowledge in the written advisement he received from plea counsel." He also contends that in declining "to extend Padilla's requirements to immigration

A-1453-19

counsel, . . . the trial court did not address" defendant's argument that the lawyer he consulted about the deportation consequences of his plea was not "immigration" counsel but plea counsel. Defendant maintains both lawyers were "co-plea counsel." He also notes "it should not be ignored" that plea counsel referred defendant to the immigration lawyer, who "is subject to a Constitutionally-required level of effectiveness that he failed to achieve." Defendant maintains an evidentiary hearing would have permitted him to establish the immigration lawyer he retained was co-plea counsel.

Finally, defendant contends "[t]here can be no question" defendant "was prejudiced by rejecting the plea offer and going to trial" under the test established in Lafler v. Cooper, 566 U.S. 156, 164 (2012) (holding to establish prejudice when a defendant has rejected a plea offer on the basis of deficient advice, the defendant must show that but for the ineffective advice, there is a reasonable probability the court would have been presented with the plea, that is, "that the defendant would have accepted the plea and the prosecution would not have withdrawn it," "the court would have accepted its terms," and "the conviction or sentence, or both," under the plea "would have been less severe" than the judgment and sentence imposed).

Although defendant argued in his opening brief that "[t]he facts of the event as presented at trial are irrelevant to this petition," we do not agree.

A-1453-19

Having reviewed defendant's trial testimony, we asked counsel at oral argument about the application of State v. Taccetta, 200 N.J. 183 (2009), and permitted them to brief the issue after argument. Having considered the record and the parties' briefs, including those they submitted after oral argument, we conclude Taccetta applies and precludes defendant from establishing the prejudice prong of the Strickland[3] test under Lafler. We accordingly affirm the trial court's dismissal of defendant's PCR petition, albeit for somewhat different reasons. See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (noting a reviewing court is free to affirm "on grounds different from those relied upon by the trial court").

Because the trial court did not hold an evidentiary hearing, our review of the factual inferences to be drawn from the record, including mixed questions of law and fact, is de novo. See State v. Harris, 181 N.J. 391, 421 (2004). We are not bound by, and owe no deference to, the trial court's legal conclusions. Id. at 415.

"In order to establish ineffective representation, the defendant must prove both incompetence and prejudice" under the familiar two-prong Strickland standard. Kimmelman v. Morrison, 477 U.S. 365, 381 (1986). That is, the defendant must establish, first, that "counsel's representation fell below

---

[3] Strickland v. Washington, 466 U.S. 668, 693-94 (1984).

an objective standard of reasonableness" and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

Although the two prongs are invariably presented with prejudice following deficient performance, the Strickland Court made clear "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order." Id. at 697. The Court counseled that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Ibid.

That's the course we follow here. The question of whether a defendant has a right to the effective assistance of a lawyer other than counsel of record — specifically, a second lawyer a defendant retains or consults to provide him advice on the deportation consequences of accepting a plea offer, who does not enter an appearance in the defendant's criminal case — is not settled in this State.[4] Although we are aware of certain unpublished cases, here and

---

[4] Although the question of whether a defendant has a right to the effective assistance of a lawyer other than counsel of record remains unsettled in New Jersey, other state and federal courts have held an ineffective assistance of counsel claim will not lie against an attorney not acting as defense counsel in

elsewhere, addressing this issue, some of which appear very well-reasoned, none appears to favor defendant's position.

Nor are we aware of any published authority in New Jersey addressing whether plea counsel is responsible to identify and bring to the attention of immigration counsel factual errors in that lawyer's advice that could affect that lawyer's opinion.[5] The Supreme Court has acknowledged that "how to define

_____

the cause. See, e.g., People v. Lange, 867 N.Y.S.2d 848, 851-52 (N.Y. App. Div. 2008) (rejecting the defendant's claim that the immigration counsel he consulted as to the deportation consequences of a guilty plea provided ineffective assistance of counsel because "the immigration attorney was not the attorney of record" in the case and "no claim has been made that defense counsel made any affirmative misstatements to [the] defendant regarding the immigration consequences of a criminal conviction"); cf. United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997) (noting "[a]bsent a constitutional right to standby counsel, a defendant generally cannot prove standby counsel was ineffective"); see also Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam) (holding a criminal defendant is not deprived of effective assistance under the Sixth Amendment by the failure of retained counsel to timely petition for discretionary review).

[5] Other state and federal courts have, however, addressed similar issues. See, e.g., United States v. Swaby, 855 F.3d 233, 240 (4th Cir. 2017) (holding defense counsel's "error — in providing [immigration counsel] with the incorrect statute, failing to read the statute to verify [immigration counsel's] advice, or both — constitutes deficient performance under the Sixth Amendment"); Madrigal-Estrella v. State, 463 P.3d 23, 30 (Or. Ct. App.), review denied, 470 P.3d 363 (Or. 2020) (explaining "[i]f the immigration consequences of petitioner's plea were clear and easily ascertainable, then petitioner's trial counsel was personally responsible for ensuring that petitioner received correct advice on that issue . . . and he could not simply assume that petitioner was getting correct advice from his immigration attorney"); Daramola v. State, 430 P.3d 201, 207 (Or. Ct. App. 2018) (holding "[t]o the

the duty and responsibilities of defense counsel in the plea bargain process . . . is a difficult question." Missouri v. Frye, 566 U.S. 134, 144 (2012). The issues defendant has raised as to the first prong of the Strickland test are obviously important ones, but they are ones we do not — and should not — resolve today, because we are convinced defendant cannot establish prejudice under the second Strickland prong.

When a defendant rejects a plea based on incompetent advice and goes to trial, the defendant establishes prejudice under Strickland by demonstrating "a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms," and that the offer as to the conviction, sentence, or both "would have been less severe than under the judgment and sentence" the court imposed. Lafler, 566 U.S. at 164. Based on our Supreme Court's holding in Taccetta, defendant's prejudice claim

_____

extent the state seems to argue that bringing in immigration counsel per se renders criminal defense counsel's performance constitutionally adequate, the state misunderstands Padilla. If criminal defense counsel relies on outside consultation with immigration attorneys in educating herself or himself about immigration consequences, outside immigration counsel functions as a member of the defense team"); Ex parte Aguilar, 537 S.W.3d 122, 128 (Tex. Crim. App. 2017) (holding "that Aguilar's plea counsel was deficient for providing incorrect advice to Aguilar despite clear and correct instructions from an immigration attorney, upon whom plea counsel assured his client he would rely").

A-1453-19

founders on the second requirement "that the court would have accepted its terms."

A jury acquitted Taccetta of murder but convicted him of racketeering, conspiracy to commit racketeering and two counts of theft by extortion, and he was sentenced to life imprisonment plus ten years with a thirty-year parole disqualifier. 200 N.J. at 185, 187. Following an evidentiary hearing on Taccetta's PCR petition, the trial judge found Taccetta's defense counsel had misadvised him about his sentencing exposure, assuring him that were he acquitted of murder, he could be sentenced to no more than twenty years in prison with a ten-year parole disqualifier. Id. at 189-90. Taccetta testified at the hearing that had he known he could be sentenced to life in prison, he would have accepted the State's offer to recommend a twenty-year term with an eight-year parole disqualifier, even if it meant admitting to aggravated manslaughter, a crime he testified he did not commit. Id. at 191-92. Finding Taccetta had established both prongs of Strickland, the prejudice prong premised on Taccetta's willingness to "have perjured himself — falsely admitting guilt to an offense to which he still protested his innocence — to secure the benefit of the earlier proposed plea deal," the trial court vacated his conviction. Id. at 192.

A-1453-19

We affirmed. The Supreme Court reversed. The Court found "as a matter of law, that [Taccetta] could not have entered a plea of guilty to the purported plea proposal" because a defendant in this State "does not have the right to commit perjury in giving a factual basis for a crime that he insists he did not commit." Id. at 194. Writing for the Court, Justice Albin explained, "[i]n the constellation of our values, it is intolerable for a court to be complicit in accepting a guilty plea from a defendant protesting his innocence." Id. at 196.

Defendant testified consistently at trial, on both direct and cross-examination, that all the sexual contact between him and the victim was consensual.[6] While he admitted to not letting her drive, he testified he did so

---

[6] The following exchange on re-direct captures the essence of defendant's testimony:

> Q. While you were in the backseat of the car and you were having sex with [the victim], and you were kissing, and you were hugging, you were beginning to have anal intercourse — at any time during that period was she unconscious?
>
> A. No, I have said before, no. Like, we were intoxicated. We were going like, I would say, with the flow of the situation. But as I say, I was aware. I was conscious of what I was doing, as she did, too.

only because she was too drunk to do so safely.[7]  No court in this State would

permit defendant to plead guilty to either criminal sexual contact, N.J.S.A.

_____

> Q. After [the victim] started to perform oral sex on
> you and she became — she — what happened to her
> aft — when she was performing oral sex?
>
> A. So when she was performing the oral sex, that
> situation, and she stop it after I would say between
> five, six seconds maximum.
>
> Q. Why?
>
> A. She stop it because she start, like, being — feeling
> bad.
>
> Q.  All right.  From that point, for the rest of the
> evening, did you have any sexual contact with [the
> victim]?
>
> A. No.

[7]  Asked on direct examination what happened when the victim wanted to drive
home, defendant responded:

> When she was trying to go home, I didn't let her go
> home.  Why?  Because it was clear that neither I and
> neither she — that we're in the conditions to drive,
> especially, in that area that is a lot of police cars,
> especially, in that area that is — it's very — because
> around that block there is a police station.  So I
> couldn't let her drive.

Asked whether she wanted to drive, defendant responded:

> Oh, she — yes, she wanted to drive because she
> actually put the keys in the car, and she turned on the

15

2C:14-3(b),[8] or criminal restraint, N.J.S.A. 2C:13-2(a),[9] based on the testimony

he offered at trial.  Defendant's testimony would not support an adequate

_____

motor.  And I still — I didn't let her drive because even — even though that she was awake, even though she was aware, in my opinion, I didn't want that she drive home.

[8] At the time of these offenses, an actor was guilty of criminal sexual contact if he committed an act of sexual contact with the victim under the circumstances set forth in N.J.S.A. 2C:14-2(c)(1), "[t]he actor commits [an act of sexual penetration with another person] us[ing] physical force or coercion, but the victim does not sustain severe personal injury."

[9] A person commits the crime of criminal restraint

if he knowingly:

a. Restrains another unlawfully in circumstances exposing the other to the risk of serious bodily injury; or

b. Holds another in a condition of involuntary servitude.

The creation by the actor of circumstances resulting in a belief by another that he must remain in a particular location shall for purposes of this section be deemed to be a holding in a condition of involuntary servitude.

In any prosecution under subsection b., it is an affirmative defense that the person held was a child less than 18 years old and the actor was a relative or legal guardian of such child and his sole purpose was to assume control of such child.

[N.J.S.A. 2C:13-2(a).]

A-1453-19

factual foundation for a guilty plea to either offense. See State v. Campfield, 213 N.J. 218, 231 (2013) (explaining "[t]he trial court 'must be satisfied from the lips of the defendant that he committed the acts which constitute the crime'" (quoting State ex rel. T.M., 166 N.J. 319, 327 (2001))).

Defendant's sworn testimony that he and the victim engaged in consensual sexual relations, that he stopped when she asked him to, and that she was a conscious and willing participant until she began to feel sick, at which point he ceased any further physical contact with her, would not support a plea to criminal sexual contact, which requires non-consensual touching of the victim. See State v. Triestman, 416 N.J. Super. 195, 220 (App. Div. 2010) (explaining "sexual contact is criminal when 'physical force' demonstrates that it is unauthorized and offensive, and any unauthorized sexual contact is a crime under the law of criminal sexual contact"). No "physical force" beyond that inherent in the act is required to make the act unlawful. See State in Interest of M.T.S., 129 N.J. 422, 444 (1992). Likewise, defendant's unequivocal testimony that he prevented the victim from driving her car only to ensure her safety by not allowing her to drive drunk, not to unlawfully confine her to facilitate a sexual assault, would not support a plea to criminal restraint, which requires "unlawful restraint in circumstances 'exposing the other to [the] risk of serious bodily injury.'" State v. Brent, 137 N.J. 107, 123

(1994) (quoting N.J.S.A. 2C:13-2(a)).[10]  As the Court reiterated in <u>Taccetta</u>, a defendant cannot enter a guilty plea in this State "while maintaining his innocence."  200 N.J. at 195.

Defendant insists <u>Taccetta</u> is distinguishable because defendant "never swore under oath that he would lie in order to accept a plea offer," the plea offer to defendant "was to a significantly reduced charge" from that of the indictment and defendant admitted under oath "facts that would constitute a factual basis to criminal restraint and to criminal sexual contact."  He is incorrect.  <u>Taccetta</u> is not distinguishable on either the facts or the law.

That defendant "never swore under oath that he would lie in order to accept a plea offer," is irrelevant.  Defendant has sworn under oath, many times over, that he is innocent of any non-consensual contact with the victim and only prevented her from driving her car to ensure her safety.  He could not maintain that, assumedly truthful, testimony and plead guilty to either criminal sexual contact or criminal restraint; doing so would constitute perjury, whether defendant announces his willingness to commit the crime or not.  He thus

---

[10]  In his supplemental brief, defendant suggests he could lawfully plead guilty to N.J.S.A. 2C:13-2(b), criminal restraint based on involuntary servitude.  As that offense requires "coerced or forced labor or service" as an element of the offense, <u>State v. Marchand</u>, 227 N.J. Super. 92, 98 (App. Div. 1988), <u>aff'd o.b.</u>, 114 N.J. 569 (1989), defendant's trial testimony would not support a guilty plea to the crime.

cannot, as a matter of law, establish he suffered any prejudice from immigration counsel's or plea counsel's deficient advice about the plea because it was a plea he'd have to perjure himself to accept. See Taccetta, 200 N.J. at 194; cf. Lafler, 566 U.S. at 167 (explaining "a defendant cannot show prejudice based on counsel's refusal to present perjured testimony, even if such testimony might have affected the outcome of the case"); Nix v. Whiteside, 475 U.S. 157, 173-75 (1986) (holding "the right to counsel includes no right to have a lawyer who will cooperate with planned perjury," and counsel's refusal to present perjured testimony cannot establish prejudice under Strickland).

We also reject defendant's claim that his "multiple inconsistent statements under oath" prohibit "this court, or any court," from knowing which of his statements is true and which false, thereby relieving a court "from accepting a plea based on a known lie." Neither this court nor any court is clairvoyant, of course. What we "know" is based on defendant's sworn trial testimony. While defendant's testimony about what he did and when was sometimes inconsistent, he has never wavered in maintaining the sexual contact between him and the victim was completely consensual, and that he only prevented her from driving because she was intoxicated. A trial court may not be complicit in accepting a plea to either criminal sexual contact or

criminal restraint from a defendant who maintains he did not unlawfully touch or restrain the victim.

Because we are satisfied based on his trial testimony that defendant could not have lawfully accepted a plea to either criminal sexual contact or criminal restraint, regardless of any deficient advice about the deportation consequences of either, and thus cannot establish prejudice resulting from the advice under the second prong of Strickland, we affirm the dismissal of his PCR petition.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION