# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0984-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

HENRY A. DELEON-
MAURICIO, a/k/a
HENRY DELONMAURICIO,
HENRY DELEON,
HENRY A. DELEON,
HENRY MAURICIO,
HENRY A. MAURICIO, and
HENRY ALBERTO DELEON
MAURICIO,

    Defendant-Appellant.

_____

Submitted May 8, 2024 – Decided May 16, 2024

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-10-1387.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Suzannah Brown, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Patrick F. Galdieri, II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Henry A. Deleon-Mauricio appeals from a May 18, 2021 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. He alleged his plea counsel coerced him into pleading guilty to a single count of first-degree aggravated sexual assault and did not properly advise him of the need to consult with immigration counsel about the immigration consequences of his guilty plea. Defendant also claims his motion counsel was ineffective for failing to argue that his guilty plea was involuntary due to mental and physical exhaustion. We affirm the denial of his PCR petition.

I.

Defendant was arrested for grabbing his then fourteen-year-old step-daughter by the neck, holding a knife to her throat, dragging her out of her room into the back of his van, and sexually molesting her. Defendant forced the victim to nasally ingest cocaine.

In October 2015, defendant was indicted for two counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a) (counts one and two); two counts of third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (counts

three and four); first-degree kidnapping, N.J.S.A. 2C:13-1(b) (count five); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(3) (count six); fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d) (count seven); third-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count eight); second-degree possession of a knife while engaged in drug-distribution activity, N.J.S.A. 2C:39-4.1(b) (count nine); six counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4 (counts ten, eleven, fourteen, sixteen, nineteen, and twenty); four counts of fourth-degree child abuse, N.J.S.A. 9:6-1 and -3 (counts twelve, fifteen, seventeen, and twenty-one); third-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count thirteen); and first-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(3) (count eighteen).

On May 20, 2016, pursuant to a negotiated plea agreement, defendant pled guilty to a single count of aggravated sexual assault. The State recommended a fifteen-year term of imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and agreed to dismiss the remaining other twenty counts of the indictment.

At the plea allocution hearing, with the aid of a Spanish interpreter, defendant testified he read the plea forms, plea counsel reviewed the plea forms

3

with him in Spanish, defendant reviewed the questions in Spanish, and plea counsel circled the responses after defendant provided an answer to each question. Defendant testified he is "fluent in both English and Spanish."

Defendant was thirty-four years old at the time of the plea hearing and had completed two years of high school. Defendant testified he was satisfied with plea counsel's advice and representation, and was not forced or pressured to plead guilty by anyone or forced to sign the plea forms. He also confirmed that he reviewed certain reports in his file with plea counsel, who had consulted a DNA expert, and that plea counsel and defendant also met with his family members about the plea and DNA results.

Relevant here, defendant acknowledged he is not a United States citizen, but a permanent resident, and that his guilty plea "may result in [his] removal from the United State[s] and/or stop [him] from being able to legally enter or re-enter the United States." When the judge[1] inquired whether defendant exercised his right to consult with an immigration attorney about the effect his guilty plea will have on his immigration status, defendant responded, "yes." The judge questioned defendant, "whose decision was it to plead guilty today?" and he responded, "[m]ine."

---

[1] The same judge presided over all of the matters addressed in this opinion.

A-0984-21

Defendant testified that the initials and signatures on the forms were his. The judge explained to defendant that he did not have to plead guilty, had a right to a jury trial, and is presumed innocent until proven guilty. The judge further stated the State would have to prove its case against defendant beyond a reasonable doubt. Defendant acknowledged the judge's statements. The judge also told defendant that at a trial, counsel would represent him, cross-examine the State's witnesses, call witnesses on his behalf, and present evidence, which defendant acknowledged. The judge also advised defendant he had a right to testify or not testify at trial, file motions, and had a right to remain silent, but by pleading guilty, defendant would give up those rights because he had to establish a factual basis for the plea.

Finally, when the judge asked defendant if he still wanted to plead guilty in light of possible immigration consequences, he answered "yes." The judge found defendant was advised by "very competent counsel," the guilty plea was entered into "freely and voluntarily," and defendant has been "alert and comprehending throughout the proceedings." The judge determined that defendant was "not under the influence of any drugs, alcohol, [or] medication," and "waived his [c]onstitutionally guaranteed rights after signing the plea forms." Defendant acknowledged the offense, and the judge accepted his plea.

A-0984-21

Approximately six months later on July 1, 2016, prior to sentencing, defendant's new attorney moved to withdraw his guilty plea on several grounds, including plea counsel's alleged failure to show him any documents, insisting "everything was all right, that there were no problems, and that was the reason why [defendant] had an attorney." On December 21, 2016, the judge conducted a testimonial hearing on defendant's motion to withdraw his guilty plea. Defendant, Carmen Mauricio, his mother, Aylene Deleon and Jeisa Mauricio, defendant's sisters, testified in support of his motion. The State called plea counsel as a witness.

Defendant testified that he only met with plea counsel "one, two, or three times the most" between his arrest and indictment, and "not more than four times" between his indictment and guilty plea. Defendant stated that he "was never pleased with his visits. It was something that [plea counsel] always did in a rush." Defendant also testified that plea counsel "never showed [him] any documents."

According to defendant's testimony, plea counsel kept insisting that if the case went to trial and defendant got convicted, he would get "[forty-five] years, [fifty] years, [and] [he] was going to lose [his] life." When asked if plea counsel ever discussed working out a plea deal with him, defendant responded, "[n]o.

[Plea counsel] always was asking me to sign some papers and if I were to do that right away, that all I was going to do was ten months in jail." Defendant stated that plea counsel told him that if he chose not to plead guilty and go to trial, he would not represent him any longer. Defendant claimed he "couldn't take it anymore," and he "was tired and depressed," when he entered the guilty plea.

Defendant also testified that he did not read the plea forms before he signed and initialed them because plea counsel "read them himself, [counsel] marked the circles on it," and that plea counsel pressured him to sign them. Defendant's new counsel then questioned him about the inconsistencies between his present testimony and his responses at the plea allocution:

> COUNSEL: And did [the judge] ask you if you had spoken with an immigration lawyer about the immigration consequences of your plea?
>
> DEFENDANT: Yes.
>
> COUNSEL: And what did you tell [the judge]?
>
> DEFENDANT: I told him that I understood everything, even though I didn't know it, but I said yes, because [plea counsel] was telling me to say yes that I was understanding everything.
>
> COUNSEL: Did [the judge] ask you if you were satisfied with the services that your lawyer gave you?

A-0984-21

DEFENDANT: I said yes, but at the same time I wanted to remove him as my attorney but I couldn't do it.

Defendant added that "any person with all the lies that [plea counsel] told [him] that day would have . . . done the same thing." Defendant's family members, who had interacted with plea counsel during the representation, all corroborated defendant's assertions when they testified.

The State then called plea counsel as a witness. Plea counsel confirmed that he gave defendant copies of the discovery and reviewed the documents and information with him. Plea counsel testified that he consulted with a "DNA scientist" and discussed the consultation and the DNA results with defendant. Plea counsel recalled that he discussed the charges with defendant and his family members, and spoke to them regarding the immigration consequences of a guilty plea.

During his course of representation of defendant, plea counsel testified he met with him "around ten times" or more and discussed the case with defendant's family members at his office "a majority of the time." Plea counsel recalled having the plea hearing carried a few times in order to meet with defendant. Plea counsel testified as follows:

THE STATE: Did you talk to him about the immigration consequences of a plea—or him pleading guilty or him being found guilty after trial?

PLEA COUNSEL: Yes.

THE STATE: How many times did you discuss that with him?

PLEA COUNSEL: Probably maybe three or four times.

THE STATE: And what did you tell him in regards to that?

PLEA COUNSEL: I told him that if he were to plead, or be convicted, he would be suffering what is called an aggravated felony charge in Immigration Court, and in all likelihood would be removed from this country.

THE STATE: Did you have that discussion about the immigration consequences of him pleading or being found guilty with anyone else?

PLEA COUNSEL: Yes.

THE STATE: Who?

PLEA COUNSEL: With his family, namely his mother . . . [and] I believe his sister was also present at one of . . . the meetings.

Plea counsel denied advising defendant he would only have to serve ten months in jail if he pled guilty and testified he told him what the plea agreement was: if defendant pled guilty to a first-degree charge, the State would ask for a fifteen-year sentence and plea counsel had the right to ask for a lower amount—

9 A-0984-21

ten years. Plea counsel denied telling defendant or his family that he would withdraw if the case went to trial. Plea counsel further asserted that he read defendant every single question on the plea forms, and defendant's guilty plea was voluntary.

Plea counsel testified he did not "force" defendant to plead guilty and that he "would be facing at least more than twenty years" based on the first and second-degree charges. On cross-examination, plea counsel testified that he told defendant "in all likelihood prior to being released [from] his term, immigration or the Department of Homeland Security would probably file a detainer against him and then there would be a removal proceeding." Plea counsel stated this information was shared with defendant's family.

On March 30, 2017, the judge rendered a thorough written decision denying defendant's motion to withdraw his guilty plea after applying the four Slater factors. See State v. Slater, 198 N.J. 145, 157-58 (2000). As to the first factor—whether defendant asserted a colorable claim of innocence—the judge found no "specific, potentially plausible facts" were presented to support his assertion that he was not guilty. As to the second factor—consideration of the nature and strength of defendant's reasons for withdrawal—the judge did "not find [d]efendant's and his family's testimony credible" because "[i]t is simply

A-0984-21

unsupported by the record." The judge emphasized that defendant's testimony was consistently at odds with the plea hearing testimony, and it appeared the motion to withdraw his guilty plea was nothing more than a "change of heart."

For the third factor—the existence of a plea bargain—the judge noted that defendant's plea was the result of a plea agreement. Finally, the fourth factor—whether withdrawal would result in unfair prejudice to the State or an unfair advantage to the accused—the judge found the passage of seven months from the plea hearing to the motion to withdraw hearing was not a significant amount of time and therefore did not unfairly prejudice the State. The judge highlighted that "permitting the case to go to trial would force the victim to re-open a traumatic incident in her life, one which she thought was closed after [d]efendant pled guilty."

On July 27, 2017, the judge sentenced defendant to a thirteen-year term of imprisonment subject to NERA—two years less than the prison term the State had agreed to recommend as part of the plea bargain. The judge also sentenced defendant to parole supervision for life (PSL), N.J.S.A. 2C:43-6.4; mandated his compliance with Megan's Law, N.J.S.A. 2C:7-1 to -23; entered a sex-offender restraining order (SORO) pursuant to Nicole's Law, N.J.S.A. 2C:14-12 and 2C:44-8; imposed applicable fines and penalties; and dismissed the remaining

A-0984-21

twenty counts of the indictment. On August 8, 2017, a judgment of conviction was entered and was later amended to reflect defendant was sentenced to PSL and that the SORO had been entered.

Defendant filed a notice of appeal of his conviction and sentence, which he subsequently withdrew.[2] Defendant filed this pro se PCR petition seven months later on September 20, 2018, alleging his plea counsel was ineffective "throughout the criminal proceeding, including during the plea agreement, [and] discovery process, resulting in fundamental injustice."

Defendant was assigned PCR counsel, who filed a letter brief and a certification from defendant in support of PCR. Defendant alleged plea counsel was ineffective: because he misinformed defendant about the immigration consequences of pleading guilty; failed to fully inform defendant of his sentencing exposure; and failed to provide discovery, especially the DNA evidence, to enable defendant to make an informed decision before pleading guilty. Defendant also alleged motion counsel was ineffective because he failed to provide any evidence or discovery and failed to argue defendant's guilty plea

---

[2] An order dismissing appeal was entered. State v. DeLeon-Mauricio, No. A-0904-17 (App. Div. Feb. 22, 2018).

was involuntary due to his physical and mental exhaustion at the time of the plea allocution.

On February 14, 2019, the judge heard oral argument on defendant's PCR petition and reserved decision. On August 13, 2019, the petition was denied. In a thirteen-page written decision, the judge found that defendant was not misinformed about his removal risk and sentencing consequences, which the same judge considered during defendant's Slater hearing. The judge found defendant failed to present any new evidence to support his claim and his "PCR rehashes the same argument as in his motion for plea withdrawal."

The judge credited plea counsel's testimony at the Slater hearing that he had already consulted a DNA expert and reviewed the findings with defendant prior to the plea. "Without more," the judge found defendant's claim "amounts to nothing 'more than . . . [a] bald assertion[.]'" (alterations in original). The judge also rejected defendant's claim that motion counsel was ineffective for failing to raise his purported mental and physical exhaustion argument because the record demonstrated that defendant "knowingly, voluntarily, and intelligently entered his guilty plea." A memorializing order was entered.

On September 27, 2019, defendant filed an appeal of the order denying PCR. While the appeal was pending, defendant filed a motion seeking a limited

A-0984-21

remand for the PCR judge to address all PCR claims raised, including his claim that plea counsel did not review discovery with him. We granted the motion and remanded to the PCR judge "to address all of the issues in the PCR petition[,] including defendant's claim that plea counsel failed to review discovery with him, including DNA evidence critical to the State's case." State v. DeLeon-Mauricio, No. A-0406-19 (App. Div. May 14, 2020).

On remand, defendant and the State filed briefs in support of their positions regarding the motion for a limited remand of the PCR petition. On May 18, 2021, the judge conducted oral argument on the remand issue—whether plea counsel's performance was ineffective for failing to provide DNA evidence and discovery to defendant prior to his guilty plea. The judge determined that defendant "provide[d] no supporting affidavit, evidence, or other proof to support his claim that DNA evidence was not provided to him other than merely his word." In addition, the judge found "[t]he record contradicts this unsupported claim," and defendant's "trustworthiness," including his own statements under oath that plea counsel did not provide the DNA evidence to him or the expert's findings.

The judge reiterated that at his plea allocution, defendant acknowledged his plea counsel consulted with an expert, and at the Slater hearing, the judge

found defendant and his family members were not credible in claiming plea counsel deprived defendant of the DNA evidence before his plea. The judge found defendant was "not credible," and plea counsel was "credible." The judge determined that defendant failed to establish ineffective assistance of counsel under either Strickland[3] prong and rejected his claim that he was put into an "impossible situation" as to whether he should plead guilty or proceed to trial without knowing whether DNA evidence would be used against him.

In addition to DNA evidence, the judge reasoned the State had medical evaluations, statements from the victim and the custodial parent, video footage, and cell phones to prove the charges. The judge found the twenty-one-count indictment against defendant exposed him to over fifty years of imprisonment if he went to trial and was found guilty. A memorializing order was entered. This appeal followed.

On appeal, defendant raises the following points for our consideration:

POINT I

THE PCR COURT ERRED IN DENYING [DEFENDANT'S] CLAIM THAT PLEA COUNSEL WAS INEFFECTIVE BECAUSE HE PROVIDED INCORRECT ADVICE REGARDING THE IMMIGRATION CONSEQUENCES OF THE GUILTY PLEA.

_____

[3] Stickland v. Washington, 466 U.S. 668, 687 (1984).

THE PCR COURT ERRED IN DENYING THE CLAIM THAT MOTION COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO ARGUE THAT [DEFENDANT'S] GUILTY PLEA WAS INVOLUNTARY DUE TO MENTAL AND PHYSICAL EXHAUSTION WITHOUT HOLDING AN EVIDENTIARY HEARING.

## II.

The standard for determining whether counsel's performance was ineffective for purposes of the Sixth Amendment was formulated in Strickland, and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). In order to prevail on an ineffective assistance of counsel claim, defendant must meet a two-prong test by establishing that: (1) counsel's performance was deficient and the errors made were so egregious that counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) the defect in performance prejudiced defendant's rights to a fair trial such that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694.

In the plea bargain context, "a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, . . . [he] would not have pled

guilty and would have insisted on going to trial.'" State v. Gaitan, 209 N.J. 339, 351 (2012) (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)).  He must also show that "a decision to reject the plea bargain would have been rational under the circumstances."  Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

A.

Defendant alleges his plea counsel misinformed him about the immigration consequences of pleading guilty because he did not inform him that in all likelihood removal was mandatory.[4]  Because defendant's plea was entered on May 20, 2016, the standards set forth in Padilla applied.  559 U.S. at 356.

Under Padilla "to satisfy a defendant's Sixth Amendment right to effective assistance of counsel, counsel has an affirmative obligation to inform a client-defendant when a plea places the client at risk of deportation."  Gaitan, 209 N.J. at 356 (citing Padilla, 559 U.S. at 374).  Our Supreme Court explained that following Padilla, "counsel is duty-bound to provide a client 'with available advice about an issue like deportation' and declared that 'the failure to do so'

_____

[4] Under 8 U.S.C. § 1227(a)(2)(A)(iii), a non-citizen "is deportable" if he or she commits an "aggravated felony."  Here, defendant plead guilty to one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), which is an aggravated offense.  See State v. Francisco, 471 N.J. Super. 386, 414 (App. Div. 2022).  "Removal" is the current statutory term for what was previously referred to as "deportation."  Gaitan, 209 N.J. 339 n.1.

17

satisfies the attorney-deficiency prong in Strickland's analysis." Ibid. (quoting Padilla, 559 U.S. at 371).

However, "immigration law is often complex, and the consequences of a conviction are often far from clear." State v. Blake, 444 N.J. Super. 285, 295 (App. Div. 2016) (citing Padilla, 559 U.S. at 369). "[T]he specificity and definiteness of counsel's required advice varies with the clarity of the immigration law itself." Ibid. Counsel's failure "to point out to a noncitizen that he or she is pleading to a mandatorily removable offense," constitutes "deficient performance of counsel." Blake, 444 N.J. Super. at 296 (quoting Gaitan, 209 N.J. at 380).

We are convinced that defendant failed to sustain his burden of proving by a preponderance of the evidence that his plea counsel's performance was deficient under the first prong of the Strickland/Fritz standard. The credible evidence in the record supports the judge's finding that plea counsel did not provide misleading advice to defendant regarding the immigration consequences of his plea. Nuñez-Valdez, 200 N.J. at 139-40.

Moreover, the credible evidence supports the judge's conclusion that plea counsel provided constitutionally effective assistance by advising defendant he may be deported and that he had the opportunity to confer with immigration

18

counsel. And, defendant confirmed that he reviewed and answered the plea forms with plea counsel, which contained questions regarding citizenship and the understanding a "guilty plea may result in . . . removal from the United States." The judge engaged in an extensive colloquy with defendant about the effect his guilty plea will have on his immigration status. Defendant testified he conferred with plea counsel prior to the entry of his plea and provided affirmative responses to the questions on the plea forms confirming that he had been advised he may be deported and had the opportunity to confer with immigration counsel if he chose to do so.

We are also satisfied that defendant did not sustain his burden of establishing the second Strickland prong because he failed to present "sufficient evidence to show 'a reasonable probability that, for counsel's errors, [he or she] would not have pleaded guilty and would have insisted on going to trial.'" State v. O'Donnell, 435 N.J. Super. 351, 376 (App. Div. 2014) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Defendant was required to demonstrate that "had he been properly advised, it would have been rational for him to decline the plea offer and insist on going to trial and, in fact, that he probably would have done so." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (citing Padilla, 559 U.S. at 372).

Defendant did not offer any evidence beyond his bare conclusory assertion that he would not have pled guilty had he known of the immigration consequences. Standing alone, this does not demonstrate a reasonable probability that, but for counsel's alleged deficiency, defendant would not have accepted the plea bargain. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) (holding "a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel"). Defendant's failure to prove both prongs of the Strickland standard by a preponderance of the evidence required the denial of his PCR petition. State v. Nash, 212 N.J. 618, 542 (2013).

B.

Finally, defendant contends his motion counsel was ineffective because he failed to argue his guilty plea was involuntary due to mental and physical exhaustion. In particular, defendant asserts his motion counsel failed to utilize information that was available to argue his guilty plea was involuntary and should have been vacated. We are unpersuaded.

As the judge noted when recounting the facts of the matter, the record shows defendant knowingly, voluntarily, and intelligently entered his guilty plea. At the plea allocution, the judge found defendant confirmed he had the opportunity to review the plea forms with counsel, understood the legal rights

he was waiving by pleading guilty, and understood the consequences of his guilty plea on his immigration status. Defendant's testimony at the plea allocution did not support his claim that his plea was involuntary due to mental and physical exhaustion. Accordingly, defendant is unable to demonstrate plea counsel's performance was so deficient as to constitute ineffective assistance of counsel under the first Strickland prong.

Defendant also failed to satisfy the second Strickland prong because he did not present evidence that demonstrates motion counsel's failure to raise his mental and physical exhaustion claim prejudiced his defense. See State v. Taccetta, 200 N.J. 183, 193 (2009). At the Slater hearing, defendant testified that when he pled guilty "he couldn't take it anymore . . . [and] was tired and depressed." The judge rejected defendant's testimony because the record showed defendant knowingly, voluntarily, and intelligently entered his guilty plea. On this record, we conclude that defendant has presented no facts to satisfy the exacting standard required by Strickland's second prong.

Defendant claims the judge erred by not conducting an evidentiary hearing because "the resolution of the claim may require the examination of the discussion that took place between motion counsel and [defendant] off the

record." Defendant asserts that he should be given the opportunity to provide testimony concerning his ineffective representation by motion counsel.

However, a defendant is only entitled to an evidentiary hearing if "a prima facie case in support of [PCR]" is demonstrated and "there are material issues of fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief." State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)). Here, the judge found there were no material facts in dispute that could not be resolved by reference to the existing record.

We agree with the judge that motion counsel was not ineffective for failing to argue defendant's plea was involuntary due to mental and physical exhaustion. In sum, the judge properly denied PCR.

To the extent not addressed, defendant's remaining contentions lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0984-21