**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3249-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

LASHAWN FITCH, a/k/a
LASHAWN D. FITCH, and
05-05-1990 FITCH,

      Defendant-Appellant.

_____

Submitted October 6, 2025 – Decided December 4, 2025

Before Judges Sabatino, Natali, and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 09-07-1467.

Jennifer N. Sellitti, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Raymond S. Santiago, Monmouth County Prosecutor, attorney for respondent (Alexandra E. Harrigan, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant LaShawn Fitch appeals from separate orders entered by the Law Division denying (1) his motion to disqualify the PCR judge; (2) his petition for post-conviction relief (PCR); and (3) his request to reconstruct his juvenile waiver hearing record to assess the effectiveness of juvenile counsel. Having reviewed the record, the arguments presented, and the governing legal principles, we affirm.

I.

The facts leading to defendant's arrest and conviction are well known to the parties and were set forth in our earlier opinion. State v. Fitch, No. A-1014-14 (App. Div. Sept. 22, 2017) (slip op. at 5-11). We need not repeat these facts in detail here and present the following relevant background summary. The charges against defendant arose from the shooting death of Nathaniel Wiggins, a suspected marijuana dealer. Defendant and co-defendants Kenneth Bacon-Vaughters, Tahj Pines, and Aron Pines[1] were indicted for conspiracy, armed

---

[1] We reference Aron Pines as "Aron" throughout the opinion for clarity purposes due to his shared surname with his brother Tahj Pines. We mean no disrespect.

robbery, unlawful possession of a weapon, and felony murder. All co-defendants were tried separately.

Defendant elected to represent himself at trial, with standby counsel appointed. At trial, forensic and eyewitness evidence connected him to the crime scene. The jury convicted defendant on all four counts, and he was sentenced to forty years in prison with an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

We affirmed defendant's conviction and sentence on direct appeal. Id. at 5. He subsequently obtained PCR based on ineffective assistance of appellate counsel due to a conflict of interest, as the same attorney represented both him and a co-defendant. Due to this conflict, with the State's consent, the trial court granted him PCR to file a new direct appeal. We affirmed the defendant's conviction and sentence in that new appeal. State v. Fitch, No. A-4828-18 (App. Div. Dec. 17, 2021). The Supreme Court denied certification. State v. Fitch, 250 N.J. 281 (2022).

Defendant filed a second PCR petition in March 2022, which was denied by the PCR judge without an evidentiary hearing. The same judge had previously denied defendant's motion to disqualify that judge from hearing the PCR petition because, while serving in the Appellate Division, the judge heard

and affirmed the denial of co-defendant Bacon-Vaughter's first PCR petition. State v. Bacon-Vaughters, A-1754-15 (App. Div. Sept. 15, 2017), certif. denied, 232 N.J. 367 (2018).

On appeal, defendant raises the following points for our consideration:

POINT ONE

FAILING TO SCRUTINIZE THROUGH A PLENARY HEARING ITS OWN SUSPICIONS PERPETUATED BY ITS PRIOR REVIEW OF THE FACTS, THE PCR COURT REASONABLY PERMEATED DOUBTS ABOUT ITS IMPARTIALITY.

POINT TWO

THE PCR COURT ERRED WHERE IT CONCLUDED THAT THE POST-TRIAL SWORN RECANTATIONS OF THE CO-DEFENDANT WERE NOT NEWLY DISCOVERED EVIDENCE.

POINT THREE

THE PCR COURT ERRED IN DETERMINING THAT THE STATE'S FAILURE TO DISCLOSE EVERETT'S COMPLETE ARREST RECORD WAS NOT MATERIAL TO THE JURY'S VERDICT SO THAT ITS SUPPRESSION DID NOT AMOUNT TO A BRADY[2] VIOLATION.

POINT FOUR

DEFENDANT DEMONSTRATED A PRIMA FACIE CASE OF INEFFECTIVENESS WHICH

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

4

WARRANTS AN EVIDENTIARY HEARING WHERE THE RECORD SHOWS THAT BUT FOR DEFENSE COUNSEL'S FAILURE TO NEGOTIATE WITH THE STATE A MORE FAVORABLE PLEA OFFER DURING THE WEEK PRECEDING THE CUTOFF DATE, AN OFFER LESS THAN TWENTY YEARS WOULD HAVE BEEN ACCEPTABLE TO DEFENDANT, THE STATE AND THE TRIAL COURT.

POINT FIVE

THE PARTIES SHOULD TRY TO RECONSTRUCT THE RECORD OF THE JUVENILE WAIVER HEARING IN ORDER TO ASSURE DEFENDANT RECEIVED ADEQUATE ASSISTANCE OF COUNSEL.

II.

We first address defendant's contention that the PCR judge's decision denying defendant's disqualification motion was error. We are unpersuaded. "An independent and impartial judiciary is indispensable to justice. A judge therefore shall uphold and should promote the independence, integrity and impartiality of the judiciary." Code of Jud. Conduct canon 1. To that end, Rule 1:12-1(g) instructs that a judge shall not sit in any matter if there is any "reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." Indeed, judges must

"refrain . . . from sitting in any causes where their objectivity and impartiality may fairly be brought into question." State v. Deutsch, 34 N.J. 190, 206 (1961).

Overall, "[j]udges must avoid actual conflicts as well as the appearance of impropriety to promote confidence in the integrity and impartiality of the Judiciary." DeNike v. Cupo, 196 N.J. 502, 507 (2008). "[A]n appearance of impropriety is created when a reasonable, fully informed person observing the judge's conduct would have doubts about the judge's impartiality." Goldfarb v. Solimine, 460 N.J. Super. 22, 31 (App. Div. 2019) (alteration in original) (quoting Code of Jud. Conduct r. 2.1 cmt. 3), aff'd as modified on other grounds, 245 N.J. 326 (2021). "A movant need not show actual prejudice; 'potential bias' will suffice." Ibid. (quoting State v. Marshall, 148 N.J. 89, 276 (1997)).

However, "[j]udges may not 'err on the side of caution and recuse themselves unless there is a true basis that requires disqualification.'" Ibid. (quoting Johnson v. Johnson, 204 N.J. 529, 551 (2010)). "A judge's duty to sit where appropriate is as strong as the duty to disqualify oneself where sitting is inappropriate." Ibid.

Motions for recusal of a judge are governed by Rule 1:12-1 and Rule 1:12-2, as well as by statute pursuant to N.J.S.A. 2A:15-49. Magill v. Casel, 238 N.J. Super. 57, 62 (App. Div. 1990). Relevant to the matter before us, Rule 1:12-2

provides: "Any party, on motion made to the judge before trial or argument and stating the reasons therefor, may seek that judge's disqualification." See also P.M. v. N.P., 441 N.J. Super. 127, 140 (App. Div. 2015); State v. McCabe, 201 N.J. 34, 45 (2010). The decision to grant or deny a motion for disqualification is "entrusted to the sound discretion of the judge and [is] subject to review for abuse of discretion." Goldfarb, 460 N.J. Super. at 30 (quoting McCabe, 201 N.J. at 45). However, appellate courts review de novo whether the judge applied the proper legal standard. Ibid.

The order denying defendant's self-represented motion seeking the court's disqualification provided:

> WHEREAS this court served as a member of the Appellate Division panel that affirmed the conviction of defendant's co-defendant, Kenneth Bacon-Vaughters, (State v. Bacon-Vaughters, No. A-0583-11T3, 2013 (App. Div. Feb. 25, 2013)); and
>
> WHEREAS, the Bacon-Vaughters appeal involved claims relating to the jury instructions in the Bacon-Vaughters trial; the admission of Bacon-Vaughter[s'] statements; the admission of the victim's statements, and Bacon-Vaughter[s'] sentence; and
>
> WHEREAS, none of those issues have any bearing on the petition for PCR relief filed by defendant, and this court's participation in the Bacon-Vaughters appeal does not qualify as having "given an opinion upon a matter in question in the action" under Rule 1:12-1(d)[.]

7

The PCR judge acknowledged his prior participation on the appellate panel in Bacon-Vaughter's appeal but found none of the issues heard by him in that appeal overlapped with the issues raised in defendant's PCR petition, and thus there was no reason to disqualify himself.

In addition, although defendant is correct that the disqualification order did not explicitly recite the appearance-of-impropriety standard, our de novo review reveals no objectively reasonable basis to doubt the court's impartiality. We agree the underlying convictions arose from separate trials, and the PCR judge, while a member of the Appellate Panel, did not make any determinations that defendant was present or participated in the murder as this issue was not determinative in that appeal. Implicit in the court's order is the judge's determination that he did not believe he was biased by his participation on the Appellate Division panel of Bacon-Vaughters's appeal; that there was no appearance of impropriety; and that a reasonable, fully informed person would have no doubts about his impartiality. See McCabe, 201 N.J. at 44; DeNike, 196 N.J. at 517.

An order or judgment may be affirmed on appeal if it is correct, even though the court may have provided the wrong reasons for it. State v. Scott, 229 N.J. 469, 479 (2017). Here, our de novo review leads to the conclusion that the

8

PCR court applied the appropriate legal standard, even if not specifically articulated in its order. We conclude the PCR judge considered the distinct nature of the issues and his determination there was no basis for disqualification and that he was impartial is amply supported by the record and was not an abuse of discretion.

III.

We next turn to defendant's contentions that the PCR court erred by concluding the post-trial sworn affidavits/recantations of co-defendants Bacon-Vaughters and Aron were not newly discovered evidence.

We provide the following summary from the PCR court's decision, describing the affidavits submitted as well as the prior factual background. In support of his PCR petition, defendant submitted a certification from Bacon-Vaughters indicating that Aron urged him to "fabricate a story implicating defendant in the Wiggins robbery." "While Bacon-Vaughters claims he initially refused, he eventually gave proffers to the [Mercer County Prosecutor's Office] in April and October 2009 implicating defendant in the robbery." The PCR court stated, "Bacon-Vaughters now maintains that proffer was a fabrication created by Aron Pines in attempt to set Fitch up" and Bacon-Vaughters also maintains that he "did not kill anyone."

Aron provided an affidavit stating that he was with defendant on the night of the murder. Aron denied that there was any discussion that night about robbing Wiggins and stated defendant was not with them and "did not participate in the crimes committed on March 11, 2008."

Concerning Aron's affidavit, the PCR court found as follows:

> While [Aron] . . . was detained in the Freehold Youth Detention Center, he told two other detainees, . . . [including Carl Driver,] that defendant was involved in the robbery of Wiggins. [He] also admitted to implicating defendant during a proffer session with the Monmouth County Prosecutor's Office[] claiming he did so "in an attempt to get a good plea."
>
> Specifically, [Aron] told prosecutors: (1) Fitch retrieved the gun from Everett's backyard; (2) Fitch tried to rob the victim earlier, but he would not come to Neptune; (3) Fitch planned the robbery of Wiggins while in Everett's home; (4) he fired the gun from Everett's roof; (5) Fitch wore a mask and discarded that mask in flight; (6) Fitch instructed him and to delete messages; (7) Fitch got cold feet and gave the gun to my brother Tahj Pines; (8) Fitch did not show up on the wiretap because he did not have a phone.

The PCR court further found that Aron's affidavit "did not retract any of these statements, but merely indicated that defendant did not accompany him to Wiggins' apartment . . . ."

When a PCR court does not conduct an evidentiary hearing, appellate courts review the denial of a PCR petition de novo. State v. Harris, 181 N.J.

391, 420-21 (2004); State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

Under Rule 3:22-10(b), a defendant is entitled to an evidentiary hearing on a PCR petition only where the defendant can establish "a prima facie case in support of [PCR], a determination by the court that there are material issues of disputed fact that cannot be resolved by reference to the existing record, and a determination that an evidentiary hearing is necessary to resolve the claims for relief." State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)). A prima facie case is established when a defendant demonstrates "a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." Id. at 355 (quoting R. 3:22-10(b)).

Defendant argues that "the PCR judge erred by concluding the information which was [one of the bases] of his PCR contained in the co-defendants' post-trial affidavits was in the possession of defendant prior to his own trial." Defendant asserts, to properly assess the credibility of the co-defendants'

11

recantations, the PCR judge should have conducted an evidentiary hearing. Defendant acknowledges though, "whether the PCR judge abused his discretion in rejecting the verified statements of the co-defendants turns on whether the affidavits actually consisted of newly discovered evidence." Here, we are convinced the information in the affidavits was not newly discovered evidence.

"A jury verdict rendered after a fair trial should not be disturbed except for the clearest of reasons." State v. Ways, 180 N.J. 171, 187 (2004). Newly discovered evidence is one of them, permitted by the court "to provide a safeguard in the system for those who are unjustly convicted of a crime." Id. at 187-88.

In State v. Carter, our Supreme Court identified a three-prong test to determine when evidence is newly discovered and sufficient to warrant the grant of a new trial:

> [T]o qualify as newly discovered evidence entitling a party to a new trial, the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted.
>
> [85 N.J. 300, 314 (1981) (citations omitted).]

"[A]ll three prongs of that test must be satisfied before a defendant will gain the relief of a new trial." Ways, 180 N.J. at 187 (citing Carter, 85 N.J. at 314).

We conclude defendants have failed to satisfy specific prongs of this test when applied to both Bacon-Vaughter's and Aron's affidavits based on our determinations which follow. Our Court has cautioned that "[n]ewly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial." Ways, 180 N.J. at 187-88. "[T]he purpose of post-conviction review in light of newly discovered evidence is to provide a safeguard in the system for those who are unjustly convicted of a crime." Id. at 188 (citations omitted). Additionally, the new evidence presented must be "evaluated in light of the . . . corroborative proofs in the record." State v. Fortin, 464 N.J. Super. 193, 221 (2020) (alteration in original) (quoting State v. Herrerra, 211 N.J. 308, 343 (2012)).

Moreover, "[c]ourts generally regard recantation testimony as suspect and untrustworthy." State v. Carter, 69 N.J. 420, 427 (1976) (citation omitted). Indeed, "a mere exculpatory statement of a co-defendant cannot by itself give rise to a new trial if that statement is clearly false or merely designed to give an

accomplice a second chance for acquittal." State v. Robinson, 253 N.J. Super. 346, 366-67 (App. Div. 1992). "[T]he burden of proof rests on those presenting such testimony to establish that it is probably true and the trial testimony probably false." Carter, 69 N.J. at 427 (citing State v. Baldwin, 47 N.J. 379, 400 (1966)). Thus, in reviewing recantation evidence, the court must determine whether the recantation "casts serious doubt upon the truth of the testimony given at the trial and whether, if believable, the factual recital of the recantation so seriously impugns the entire trial evidence as to give rise to the conclusion that there resulted a possible miscarriage of justice." State v. Puchalski, 45 N.J. 97, 107-08 (1965).

Concerning the Bacon-Vaughter's affidavit, defendant argues the PCR judge erred "because he neglected to observe Bacon-Vaughters's 2018 and 2022 sworn recantations, unlike his 2008 account, offered an explanation of why he made the 2009 police statement," and "failed to consider whether Bacon-Vaughters's explanation as to why his 2018 recantation of the 2009 police statement incriminating defendant was discoverable by a reasonably diligent defendant prior to trial."

Under the first prong of Carter, we conclude Bacon-Vaughters's post-trial statements exculpating defendant are merely cumulative or repetitious of the

14

evidence already in defendant's possession, which defendant could have, but chose not to, introduce at his own trial. State v. Nash, 212 N.J. 518, 549 (2013); Carter, 85 N.J. at 314. Defendant could have produced Bacon-Vaughters at trial to provide testimony consistent with his 2008 exculpatory statement to the police; that is, defendant was not involved with the planning of the armed robbery or shooting death of Wiggins. However, defendant chose not to, presumably to not expose Bacon-Vaughters to cross-examination regarding his later 2009 inculpatory statement to the police.

Turning to the second prong of the Carter test, this requires a defendant to "act with reasonable dispatch in searching for evidence before the start of the trial." Ways, 180 N.J. at 192. "[This prong of] Carter recognizes that judgments must be accorded a degree of finality and, therefore, requires that the new evidence must have been discovered after completion of trial and must not have been discoverable earlier through the exercise of reasonable diligence." Fortin, 464 N.J. Super. at 217 (quoting Ways, 180 N.J. at 192); see also State v. Szemple, 247 N.J. 82, 99 (2021) (quoting Ways, 180 N.J. at 192) ("The newly-discovered evidence requirement 'should encourage defendants and attorneys to act with reasonable dispatch in searching for evidence' in anticipation of trial.").

Here, defendant could have, but chose not to, interview Bacon-Vaughters prior to trial to inquire about the inconsistency in his statements. Furthermore, defendant could have questioned Bacon-Vaughters about this issue during trial but chose not to. As the PCR court recognized, this tact was likely chosen because Bacon-Vaughters would have been subject to cross-examination on his 2008 exculpatory statement, and the State would have been able to introduce his 2009 inculpatory statement.

Furthermore, under the third prong of Carter, we conclude Bacon-Vaughters's post-trial recantations were not prejudicial because they were not the sort of evidence that would probably change the jury's verdict if a new trial were granted. Nash, 212 N.J. at 549; Carter, 85 N.J. at 314. As we previously explained, if a new trial were granted and defendant called Bacon-Vaughters to testify consistent with this post-trial affidavit alleging defendant was not involved in the felony murder of Wiggins, Bacon-Vaughters would be subject to cross-examination by the State regarding his credibility, including the timing of his affidavit—after his own conviction and sentencing—and his 2009 statement which directly inculpated defendant. Moreover, the evidence of defendant's guilt, including Everett's testimony and forensic DNA evidence, was strong and would most likely stifle Bacon-Vaughters's post-trial recantations.

16

We conclude under these circumstances it is not likely his testimony would have changed the jury's verdict.

Defendant also claims that the PCR court erred in concluding Aron's 2022 affidavit was not newly discovered evidence. He argues that "[b]y acknowledging that the co-defendant had 'nothing to lose,' the PCR court conceded that this information was not in defendant's possession until after Aron's release from prison." According to defendant, "while Aron may not have had anything to lose because he served his sentence, it is this type of speculation that requires testing through an evidentiary hearing."

Defendant further argues that Aron's affidavit "referred to facts that played an important role in the State's case and the jury's determination of guilt." Specifically, Aron's statement that the "black knit hat" which the State asserted contained defendant's DNA "was left in his car when he drove defendant to visit his cousin at the hospital earlier in the day," and that "Aron . . . threw the hat out of his car window after the robbery/homicide . . . ."

We are not persuaded by defendant's argument that Aron's affidavit was newly discovered evidence which entitled him to a PCR evidentiary hearing. We conclude the PCR judge correctly found that defendant was aware of the allegations outlined in Aron's October 2022 certification long before his trial in

2014, specifically, that Aron convinced Driver to tell the police that defendant was involved in the armed robbery/felony murder of Wiggins, in order "to take some of the heat off of" Aron. Indeed, at the September 12, 2012, pre-trial conference, defense counsel informed the court that:

> Driver has a story to tell that he was approached by [Aron] and given the name of these defendants and that he was told specifically, "I want you to go tell the police this and implicate Fitch; add Fitch to the three, it wasn't three, it was four. I want you to add Fitch."

As set forth in the PCR court's opinion, defense counsel argued that Aron attempted to manipulate Driver to implicate defendant. Thus, by the time of his own trial, defendant was aware of the allegations contained in Aron's 2022 certification regarding Driver and Aron's attempt to implicate defendant. Therefore, this information cannot be considered newly discovered evidence under the second prong of Carter because the evidence was known to defendant or was discoverable by reasonable diligence before his trial.

As to the allegations that Aron threw the hat and glove out of his car window, we conclude this was also clearly discoverable through the exercise of reasonable diligence. Fortin, 464 N.J. Super. at 217. Defendant was aware of Aron's plot and could have attempted to interview him prior to trial. Also, he could have, but chose not to, produced Aron at trial to testify consistent with

18

information contained in the 2022 certification. However, defendant made a strategic decision not to expose Aron to cross-examination with his prior 2008 statements that directly inculpated defendant.

As contained in Aron's March 26, 2008 statement to the police, he stated defendant was in the car when they drove away from the murder scene through a residential neighborhood, and "[t]hat's when we parked and we was rolling down the windows I think that's when Fitch threw his mask and gloves and all that shit." In his November 21, 2008, statement, Aron again inculpated defendant when he explained defendant's involvement in the armed robbery/felony murder of Wiggins to the police. However, if Aron were to testify at a new trial consistent with his 2022 certification, both of his 2008 statements to police that inculpated defendant, would be squarely used to impeach his credibility.

We reiterate, because "[c]ourts generally regard recantation testimony as suspect and untrustworthy," it is not reasonable to believe that defendant could carry his burden of proving that the 2022 recantation was probably true, and the pre-trial statements were probably false. Carter, 69 N.J. at 427; see also Robinson, 253 N.J. Super. at 366-67 ("[A] mere exculpatory statement of a co-defendant cannot by itself give rise to a new trial if that statement is clearly false

or merely designed to give an accomplice a second chance for acquittal."). Based on our above analysis, it is clear Aron's 2022 affidavit in support of PCR did not meet the first or second prongs of the Carter test because it was cumulative and was known prior to defendant's trial.

Since we conclude the PCR court did not err in finding Bacon-Vaughter's or Aron's statements were newly discovered evidence, defendant has not met his burden showing the information in the affidavits presented a prima facie case for PCR entitling him to an evidentiary hearing.

IV.

We now turn to defendant's claim that the PCR court erred by determining the State's failure to disclose Everett's complete criminal history record, including weapons related offenses were not Brady violations.

Defendant first argues "[t]he PCR judge applied an erroneous legal standard regarding materiality with respect to Everett's criminal history" requiring reversal. Defendant contends, "[w]hether Everett's criminal history would have had a real possibility to affect the outcome of the trial is not determinative of materiality."

Defendant also argues that the State did not disclose Everett's then pending weapons-related offense, which reasonably suggested that Everett was

familiar with guns, and that defendant only learned of this after his trial and direct appeal. Defendant asserts "Everett's purported familiarity with guns corroborate[d] that the handgun at his home was not the weapon used to kill Wiggins. As such, Everett's familiarity was material and favorable to defendant's case." Defendant further contends because the State emphasized Everett's lack of expertise in identifying the murder weapon during its closing argument, "Everett's familiarity with handguns evidences a reasonable probability that the disclosure of his complete arrest record would have affected the jury's verdict."

"The principal purpose of our discovery rules is to assure the parties every legitimate avenue of inquiry prior to trial to enhance the search for the truth." State v. Burnett, 198 N.J. Super. 53, 58 (App. Div. 1984). "A prosecutor's obligation to 'turn over material, exculpatory evidence to the defendant' is well established . . . ." Nash, 212 N.J. at 544 (quoting State v. Morton, 155 N.J. 383, 413 (1998)).

Three elements must be considered when deciding whether a Brady violation has occurred: "(1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence

must be material to the defendant's case." State v. Brown, 236 N.J. 497, 518 (2019) (citing State v. Nelson, 155 N.J. 487, 497 (1998)); accord Strickler v. Greene, 527 U.S. 263, 281-82 (1999). "If the undisclosed [Brady] evidence was merely cumulative or repetitious as to the purpose for which it could have been used, then the verdict need not be reversed." State v. Conway, 193 N.J. Super. 133, 174 (App. Div. 1984) (citing Carter, 85 N.J. at 313).

"[E]vidence is material for Brady purposes 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Marshall, 148 N.J. at 156 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985) (Blackmun, J., plurality opinion)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682.

A trial judge's determination as to whether evidence is subject to disclosure under Brady presents a mixed question of law and fact. Marshall, 148 N.J. at 185. For mixed questions of law and fact, appellate courts give deference to the trial court's supported factual findings but review de novo the court's application of legal rules to the factual findings. State v. Pierre, 223 N.J. 560, 577 (2015).

Defendant argues that "[t]he PCR judge applied an erroneous legal standard regarding materiality with respect to Everett's criminal history." See State v. Martini, 160 N.J. 248, 269 (1999) (quoting Bagley, 473 U.S. at 682) (finding evidence is "material" if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different"). Defendant asserts the PCR judge improperly determined that Everett's criminal history "was not material because it did not have a 'real possibility,' as opposed to a 'reasonable probability,' to affect the outcome of the trial," and Everett's criminal history would have had a real possibility to affect the outcome of the trial.

We conclude defendant's argument is based solely on a putative distinction between the terms "real possibility" and "reasonable probability." The PCR judge cited Carter, rather than Martini, in finding there was no Brady violation. Specifically, in his written decision, the PCR judge stated: "even if the State failed to turn over the arrest records, there must be a 'real possibility' that the undisclosed evidence would have affected the result. Carter, 91 N.J. at 113. There must be more than the 'mere possibility that the undisclosed information might have helped the defense.' Ibid." As a result of the PCR judge

23

citing the holding in <u>Carter</u> rather than <u>Martini</u>, defendant argues that the PCR judge applied the wrong legal standard.

We are unpersuaded by this argument because "it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." <u>Hayes v. Delamotte</u>, 231 N.J. 373, 387 (2018) (quoting <u>Do-Wop Corp. v. City of Rahway</u>, 168 N.J. 191, 199 (2001)); <u>R.</u> 2:2-3(a). Indeed, an order or judgment may nevertheless be affirmed on appeal if it is correct, even though the judge provided the wrong reasons for it. <u>Scott</u>, 229 N.J. at 479. Thus, even if we assume the PCR judge may have applied the wrong standard, we must determine, de novo, whether the withheld evidence was material. <u>Fortin</u>, 464 N.J. Super. at 221.

Contrary to defendant's contention, we conclude defendant failed to establish a <u>Brady</u> violation. Defendant argued that the prosecution failed to provide the defense with Everett's arrest record of June 21, 2012, for possession of two assault rifle magazines.

However, we determine this information was not material because there was not "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Marshall</u>, 148

24

N.J. at 156 (quoting Bagley, 473 U.S. at 682). As the PCR court properly determined, defendant claimed had he been given this information, he would have been able to cross-examine Everett at trial and impeach his credibility. However, when Everett testified at defendant's trial, he had already retracted his prior statement implicating defendant and the cross-examination by defendant was intended to bolster Everett's credibility surrounding his second statement, not to impeach him. Because defendant intended to convince the jury that Everett was credible, impeaching Everett with his arrest for possession of an assault rifle magazine would have been harmful, not helpful, to the defendant. Therefore, we deem this information not to be material.

Notwithstanding the foregoing, defendant claims on appeal that he would have used this information to bolster Everett's credibility. According to defendant, the undisclosed weapons-related offense "reasonably suggests that [Everett] was familiar with guns." Defendant claims that Everett testified that "he had criminal charges pending related to an assault rifle." Defendant overstates Everett's testimony. Everett specifically testified that he "d[id]n't want any part to do with any gun." He also testified that the charge related to the possession of two rifle magazines, not the possession of an assault rifle or any bullets. He further testified, "I never had bullets."

We conclude defendant's claim that Everett had familiarity, or expertise, with guns is speculative and his criminal record does not support the "expertise" as proffered by defendant. The possession of assault rifle magazines, with no evidence that he possessed an assault rifle, does not reasonably suggest that Everett had familiarity with handguns—a completely different category of weapon. We therefore conclude the evidence which defendant asserts was violative of <u>Brady</u> was not material as it would not have assisted defendant in his defense nor changed the outcome at trial.

V.

We now address defendant's claim pre-trial counsel was ineffective by failing to negotiate adequately for a more favorable plea. Defendant argues that trial counsel failed to relay to defendant a favorable plea offered by the State of less than 20 years in prison. We conclude this assertion fails because the record does not support this argument.

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong <u>Strickland</u>[3] test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense."

---

[3] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey).

Initially, as found by the PCR judge, the record belies the proposition counsel failed to inform defendant of a plea offer of 15 years, as the length of imprisonment was specifically discussed at court proceedings and no evidence of a 15-year term plea offer exists the record other than defendant's bare, uncorroborated assertions.

Further, the record shows defendant vehemently proclaimed his innocence throughout the proceeding. In its decision, the PCR court found: "defendant maintained he had no involvement in the Wiggins murder." At a pre-trial conference, "defendant rejected a plea offer of 20 years in prison claiming he wanted to go to trial and prove his innocence" and when the trial court judge "questioned defendant if he wanted to take the chance in going to trial, defendant responded, 'I mean this is the chance that's going to have to be taken.'" The PCR court also noted "[a]t the plea cutoff hearing . . . defendant again rejected the State's plea offer of 20 years." The PCR court concluded "[there is] nothing in the record to indicate that the State ever offered less than a 20-year sentence; defendant's claim that [counsel] failed to relay a 15-year offer is groundless and unsupported."

27

We agree. The record does not support defendant's contention his counsel was offered a plea to a 15-year sentence which he failed to communicate. At the status conference, the following colloquy occurred:

> [THE PROSECUTOR]: The final real plea offer that we've extended to the defendant on this case was 20 years subject to the No Early Release Act. . . . It's my understanding that's being rejected at this time. We did have the potential to come down a little bit, but there were no further negotiations.
>
> So that being said . . . I believe it's Mr. Fitch's intention at this point in time to proceed to trial. . . .
>
>      . . . .
>
> [DEFENSE COUNSEL]: He read [the plea cutoff form]. And that is the understanding, Your Honor, that we are going to proceed to trial.

We further conclude the court would not have accepted any guilty plea because defendant had steadfastly maintained his innocence. Where a defendant insists he did not commit the crime, he cannot, as a matter of law, enter a plea of guilty. State v. Taccetta, 200 N.J. 183, 194 (2009). "[A] defendant does not have the right to commit perjury in giving a factual basis for a crime that he insists he did not commit." Ibid. "The notion that a defendant can enter a plea of guilty, while maintaining his innocence, is foreign to our state jurisprudence. Court-sanctioned perjury is not a permissible basis for the entry of a plea in this

28

State." Id. at 195-96 (footnote omitted); see Shammas v. Shammas, 9 N.J. 321, 330 (1952) ("All perjury is an affront to the dignity of the court and to the integrity of the judicial process . . . ."). The Taccetta Court explained:

> Rule 3:9-2 instructs our courts not to accept a plea of guilty unless "there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea." (Emphasis added). To accept a guilty plea, a judge must be "'satisfied from the lips of the defendant that he committed the acts which constitute the crime.'" State v. Slater, 198 N.J. 145, 155 (2009) (quoting State v. Smullen, 118 N.J. 408, 415 (1990)). "Even if a defendant wished to plead guilty to a crime he or she did not commit, he or she may not do so. No court may accept such a plea." Smullen, 118 N.J. at 415.
>
> [Taccetta, 200 N.J. at 196.]

Defendant consistently maintained his innocence and relied on an alibi defense at trial by calling several witnesses who testified he was not at the scene of the murder. We conclude the record is clear that defendant was offered a plea recommending a twenty-year prison term, which he rejected, repeatedly expressing a wish to prove his innocence and indicating total disinterest in the plea offer. No evidence suggests an uncommunicated lesser plea was available or that defendant would have accepted it.

29

Defendant's support for this proposition is based only on his bare assertion, which we conclude is insufficient to satisfy the first prong of Strickland/Fritz. Because no proofs exist that the State made a 15-year offer we need not reach the second prong of the test.

VI.

We now address defendant's final argument—made for the first time on appeal—to reconstruct his juvenile waiver hearing record "in order to assure defendant received adequate assistance of counsel" in his juvenile proceeding. "Under Rule 3:22-4, a defendant is barred from raising any issue in a PCR petition that could have been raised on direct appeal unless one of three enumerated exceptions apply." State v. Wildgoose, 479 N.J. Super. 331, 344 (App. Div. 2024) (citing Nash, 212 N.J. at 546). Specifically, the Rule provides:

> Any ground for relief not raised in the proceedings resulting in the conviction . . . or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the [PCR] hearing finds:
>
> (1) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceeding; or
>
> (2) that enforcement of the bar to preclude claims, including one for ineffective assistance of counsel, would result in fundamental injustice; or

(3) that denial of relief would be contrary to a new rule of constitutional law under either the Constitution of the United States or the State of New Jersey.

[R. 3:22-4(a).]

The Rule explains that with respect to the first enumerated subsection, "[a] ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence." R. 3:22-4(a)(1).

We conclude the grounds offered to support defendant's PCR petition are barred under the above cited rule. We conclude none of the three exceptions of the rule apply because defendant's claim could have been raised in either of his two direct appeals. The trial court did not find, and defendant does not make, a claim of ineffective assistance of trial counsel during the waiver hearing and merely claims a right to a review of the juvenile record to determine if such a ground exists.

In addition, even when reaching the merits of this claim, we concur with the trial court's reasoning which found:

> Even if this court assumes that defendant's allegations are true that his counsel failed to advise him that he could testify or produce witnesses during the juvenile waiver hearing, he has failed to establish the second

31

prong of <u>Strickland</u> that he suffered prejudice as a result. Because defendant has failed to present a prima facie showing of ineffective assistance by either his juvenile or his pre-trial counsel he is not entitled to an evidentiary hearing on any of his claims.

To the extent we have not specifically addressed any of defendant's remaining legal arguments we conclude they lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3249-22